# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-3192

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES P. ROTI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 CR 448—**James B. Zagel**, *Judge.*

ARGUED APRIL 9, 2007—DECIDED MAY 3, 2007

Before EASTERBROOK, *Chief Judge*, and KANNE and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge.* Saddled with a judgment
for more than $400,000 on account of a guarantee of his
small corporation's debts, James Roti decided to hide his
assets from creditors. He has been convicted of bankruptcy
fraud, see 18 U.S.C. §157, and concealing assets from the
bankruptcy trustee, see 18 U.S.C. §152. His sentence is
21 months' imprisonment. Roti concedes that he parked
some assets with family members and moved others to
accounts unknown to his creditors, and that he lied to his
principal creditor, to the federal bankruptcy court, and to
the trustee. Roti says that his lawyer Andrew Werth put

him up to it, and at trial he contended that he should be acquitted because Werth managed the scheme's details. The jury rejected that defense—for it was no defense at all.

That two people cooperate to swindle a third does not excuse either of the schemers, even if one of them is a lawyer. Advice of counsel is not a free-standing defense, though a lawyer's fully informed opinion that certain conduct is lawful (followed by conduct strictly in compliance with that opinion) can negate the mental state required for some crimes, including fraud. See *United States v. Sprong*, 287 F.3d 663, 665-66 (7th Cir. 2002); cf. *United States v. Cheek*, 3 F.3d 1057, 1061 (7th Cir. 1993). But Roti does not contend that Werth assured him that concealing assets and lying to the court would be lawful. Roti did not call Werth as a witness or introduce any opinion letter. So it is hard to understand how Werth's role, whatever it was, can negate *scienter*. Roti does not deny knowing that he was lying under oath, if not at the outset (he says that he signed blank schedules that Werth filled in and filed) then in his oral declaration at the creditors' meeting under 11 U.S.C. §341 that all of the schedules were complete and correct.

What Roti did propose to offer is evidence that, after the fraud was uncovered, he filed suit against Werth. That suit was taken over by Roti's trustee in bankruptcy and settled for $15,000. According to Roti, the settlement shows Werth's recognition of his culpability for Roti's predicament. The district court held, however, that Fed. R. Evid. 408 barred the introduction of evidence about the settlement, and Roti's principal argument on appeal is that the decision was mistaken because Rule 408 does not apply in criminal prosecutions.

*United States v. Prewitt*, 34 F.3d 436 (7th Cir. 1994), states that Rule 408 is limited to civil cases. See also *United States v. Ghilarducci*, 480 F.3d 542 (7th Cir.

2007) (decided while this case was on appeal). But Roti's lawyer did not call *Prewitt* to the district judge's attention until after trial or make an argument along its lines. The point therefore has been forfeited, and our review is limited to a search for plain error—of which there was none, for multiple reasons.

One reason is that the district judge ruled that he would exclude the evidence under Fed. R. Evid. 403 independent of Rule 408. That decision was not an abuse of discretion. It should be evident from what we have said already that Roti proposed a wild goose chase; the district judge properly limited the inquiry into this distraction. Indeed, we doubt that the evidence was relevant, and if that's so then it was inadmissible independently as a result of Rule 402. The problem is not only that Werth's culpability would not excuse Roti's but also that the settlement of a civil claim does not imply anything helpful about Roti's state of mind. There were at least four possibilities consistent with settlement: (a) Werth failed to investigate Roti's finances adequately before filing the bankruptcy petition and schedules; (b) Werth misled Roti about what he was going to omit from the bankruptcy schedules; (c) Werth told Roti to lie in both the schedules and the creditors' meeting; (d) Roti lied to Werth as well as to the court, and Werth did nothing wrong but sought to avoid the cost and distraction of defending the suit. All four situations produce a settlement, so the fact that Werth agreed to pay something would not have helped a jury distinguish among the possibilities.

More than that, however, is what has happened to Rule 408 since *Prewitt*. The panel in *Prewitt* deemed Rule 408 inapplicable to criminal prosecutions because its text did not specifically mention criminal litigation. *Prewitt* did not discuss Fed. R. Evid. 1101(b) or say, after the fashion of *Green v. Bock Laundry Machine Co.*, 490 U.S. 504 (1989), that application of Rule 408 to criminal prosecutions

would be absurd. In 2006 the Supreme Court promulgated an amendment to Rule 408 demonstrating that at least the new version (which took effect on December 1, 2006) applies to criminal cases. The amended rule provides:

**Rule 408. Compromise and Offers to Compromise**

(a) Prohibited uses.—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

> (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted uses.—This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Note that the new Rule 408(a)(2), by creating a partial exception for criminal cases, shows that the rest of the rule applies to both civil and criminal litigation. The Committee Note accompanying the amended Rule 408 explains that this was done because the Committee agreed

with the result of *Prewitt*, which concluded that admissions of fault made in compromise of a civil securities enforcement action were admissible against the accused in a criminal action for mail fraud, but not *Prewitt*'s view that Rule 408 is wholly inapplicable to criminal prosecutions.

Our point is not that the amended Rule 408 governs on this appeal. It took effect after the trial, and the Supreme Court's order promulgating the amendment did not direct retroactive application. Instead we refer to this development to show that failure to apply *Prewitt* to Roti's trial would not seriously affect the fairness, integrity, or reputation of judicial proceedings, one ingredient of plain-error review. See *United States v. Olano*, 507 U.S. 725, 735-37 (1993). Criminal defendants do not acquire vested rights to the benefit of appellate opinions whose rationale has been repudiated. See *Lockhart v. Fretwell*, 506 U.S. 364 (1993). The 2006 change shows that *Prewitt* gave an overbroad reason for what was a sound conclusion on the case's facts. There is no reason to deem *Prewitt*'s rationale, which is no longer authoritative, such a fundamental component of criminal procedure that it must be applied on plain-error review.

Roti's reply brief presents an argument that was not made in either the district court or his opening brief: that after *Cunningham v. California*, 127 S. Ct. 856 (2007), district judges no longer may find facts that affect federal sentences. Although this argument could be dispatched as forfeited, it has become popular since the Supreme Court's decision, and it is best to close the door before other lawyers waste their time and ours pursuing it.

*Cunningham* holds that California's determinate sentencing law violates the sixth amendment, as understood in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *United States v.*

*Booker*, 543 U.S. 220 (2005), by granting the judge rather than the jury the power to find facts that raise the maximum lawful sentence. Roti contends that *Cunningham* applies to the federal Sentencing Guidelines as well as to California's system.

Yet *Booker* itself held that the Guidelines as enacted violate the sixth amendment. The remedial portion of *Booker* solved that constitutional problem by making the Guidelines advisory. Given that adjustment, findings of fact under the Guidelines no longer determine statutory maximum sentences. *Cunningham* therefore has no effect on post-*Booker* federal practice. District judges remain free, as the remedial portion of *Booker* instructs, to make findings of fact that influence sentences, provided that the sentence is constrained by the maximum set by statute for each crime. See, e.g., *United States v. Hawkins*, 480 F.3d 476 (7th Cir. 2007).

One observation before we close. Roti is in prison, but Andrew Dean Werth remains licensed to practice law. According to the Attorney Registration and Disciplinary Commission of Illinois, he is in good standing and no disciplinary inquiry has ever been conducted. If Roti's testimony at trial is correct, however, then Werth planned and executed a federal crime for which Roti has taken the fall. If Roti was lying at trial about Werth's role (as the district judge concluded when holding that Roti obstructed justice by his perjury), there remains the possibility that Werth turned a blind eye to his client's fraud and facilitated misuse of the bankruptcy process. The settlement may reflect Werth's recognition that he seriously mishandled the situation—though, as we mentioned, it may show only Werth's desire to put costly litigation behind him and get on with life. Neither knaves nor fools should be representing debtors who need legal assistance. We will send copies of this opinion (and of the briefs, which provide

additional factual detail) to the ARDC and the disciplinary committee of the federal district court so that appropriate inquiries can be made into Werth's fitness. In asking these bodies to conduct an inquiry, we do not express any opinion about whether Werth has engaged in sanctionable conduct.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*