In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1990

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HENRY SAVAGE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 534—**John W. Darrah**, *Judge.*

ARGUED SEPTEMBER 7, 2007—DECIDED OCTOBER 17, 2007

Before BAUER, POSNER, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Henry Savage was convicted of possession with the intent to distribute 50 or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Savage to 210 months' imprisonment. On appeal, Savage challenges the district court's failure to *sua sponte* order a competency hearing, the district court's exclusion of evidence supporting Savage's coercion defense, and his sentence. For the following reasons, we affirm Savage's conviction and sentence.

## I. Background

On July 29, 2003, Savage purchased over 60 grams of powder cocaine and over 60 grams of crack cocaine from his cousin. Following a tip from a confidential source, Drug Enforcement Agency ("DEA") agents arrested Savage and confiscated the drugs. Savage waived his *Miranda* rights and admitted to DEA Special Agents David Brazao and John Morris that he made the drug purchase with the intent to sell.

Savage agreed to cooperate with the DEA against his narcotics associates, and testified before a grand jury about various drug transactions. Savage also agreed to record phone conversations and meetings with Martin Valdez, a leader of the Latin Kings street gang, with whom Savage had a business and personal relationship. From July 29, 2003 until September 29, 2003, Savage recorded several phone calls and several hours of meetings with Valdez. Savage continued to meet with government agents to provide information about his dealings with Valdez into 2004.

In July 2004, Savage advised the government that he was no longer willing to cooperate. The government then filed a criminal complaint against Savage, and on August 5, 2004, the grand jury returned a four-count indictment charging Valdez, Savage, and other defendants with various narcotics offenses. Count Four charged Savage with possession with intent to distribute in excess of 50 grams of mixtures containing cocaine base in violation of 21 U.S.C. § 841(a)(1). The grand jury later returned a superceding indictment charging Savage with one count of possession with intent to distribute crack cocaine. All other co-defendants other than Valdez and Savage pleaded guilty, and a trial was set for both defendants on February 14, 2005. On February 2, 2005, the district court granted Savage's motion for severance. Savage refused to testify against Valdez at Valdez's trial.

At Savage's trial, the government elicited testimony from Special Agents Brazao and Morris regarding Savage's arrest and admissions. The government called expert witnesses to establish that the recovered drugs were cocaine base in the form of crack. Savage's defense, as pertinent on appeal, was that Valdez coerced him into purchasing the drugs under threat of physical violence. Savage testified that a few hours before the drug purchase, Valdez gave Savage $1,500 and ordered him to "invest that wisely" or else Valdez would "shoot him like he shot Eddie Hurt," another member of the Latin Kings. Savage testified that he informed both Dr. Bernard Rubin, a forensic psychiatrist who examined Savage to evaluate his coercion defense, and Special Agent Brazao about the threat on the morning of July 29, 2003. Both Dr. Rubin and Special Agent Brazao denied that they were informed of this threat. Savage also attempted to introduce evidence of threats made by Valdez after July 29, 2003. The district court excluded these post-conduct threats.

The jury convicted Savage, finding by a special verdict that the substance recovered from Savage constituted over 50 grams of crack cocaine. The district court sentenced Savage to 210 months in prison, applying a two-level enhancement for obstruction of justice under the United States Sentencing Guidelines Manual § 3C1.1.

## II. Discussion

On appeal, Savage argues that (1) the district court erred by failing to order on its own motion a hearing on Savage's competency to stand trial; (2) the district court erred in excluding evidence of threats made by Valdez after July 29, 2003, the date Savage purchased the drugs; (3) the district court failed to make adequate findings to support a two-level enhancement for obstruction of justice

in the form of perjury; and (4) under the Supreme Court's decision in *Cunningham v. California*, the district court impermissibly found facts that enhanced his sentence. We address each issue in turn.

### A. Competency Hearing

Savage on appeal contends that the district court should have ordered *sua sponte* a competency hearing. Under 18 U.S.C. § 4241(a), a court may on its own motion order a hearing on the competency of the defendant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Where the issue of the defendant's mental competency to stand trial is raised for the first time on appeal, in order to justify a retrospective competency hearing, the appellant must present facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental competence." *United States v. Teague,* 956 F.2d 1427, 1431-32 (7th Cir. 1992) (citing *United States v. Collins*, 949 F.2d 921, 927 (7th Cir. 1991)).

Savage argues that the district court had "reasonable cause" to doubt his competence. During Savage's case, Dr. Rubin testified that Savage suffered from post-traumatic stress disorder and dependent personality disorder. The symptoms of these disorders, according to Dr. Rubin, typically include irrational outbursts of anger and an inability to take responsibility for one's actions. Savage argues that Dr. Rubin's evaluation should have put the district court on notice of Savage's incompetency.

Additionally, during Savage's testimony, counsel for Savage informed the district court that during the two

days prior to his testimony, Savage had neglected to take his prescribed medication, Prozac. The district court immediately ordered a recess so that Savage could have lunch and take his medication. During the recess, the court spoke with a paramedic in the Metropolitan Correctional Center, who advised the court that they would be delivering the medication. The court then spoke with Savage, and observed:

> [W]e're going to make sure that he gets his medication and that he'll be able to participate during the proceedings this afternoon. If he is not, if I detect that he is unable to appreciate the nature of the proceedings that are going on here today, we'll recess for today and adjourn and begin again tomorrow. But at this point when I spoke to him a few minutes ago he seemed cogent and aware.

Tr. at 164. Counsel for Savage then agreed with the district court that "he certainly seemed to be aware of what was going on . . . about him." *Id.*

Savage then resumed his testimony. On several occasions, the court ordered Savage to confine his answers to the questions asked of him. Savage repeatedly ignored this order, attempting at multiple points to introduce inadmissible evidence. Near the end of the cross-examination, Savage became openly frustrated with the prosecutor's questions. On the stand, Savage accused the government of being angry at him for refusing to testify against Valdez, and further accused the government, and apparently the district court, of wanting Savage to be killed for his testimony. The court promptly ordered a recess and adjourned until the following day.

Our review of the record shows that the district court properly found that it had no reasonable cause to doubt Savage's competence to stand trial. Regarding the two mental disorders identified by Dr. Rubin, Savage fails

to establish why either disorder would necessitate a finding of incompetence. The mere fact that a criminal defendant has a personality disorder does not prevent the defendant from appreciating the proceedings or assisting in his defense. *Teague*, 956 F.2d at 1432 (finding that the defendant "cited no authority and thus failed to support his view that his alleged mental problems were of such a nature as to require the holding of a competency hearing"). The symptoms of the specific disorders identi-fied by Dr. Rubin suggest that Savage may be prone to verbal outbursts or antisocial behavior, but they do not suggest a "real, substantial and legitimate doubt as to [his] mental competence." Additionally, we believe that the district court properly addressed Savage's failure to medicate before testifying. The district court observed Savage and determined that the defendant's choice to testify unmedicated did not render him incompetent, and we defer to the district court's observations and judgment.

Finally, Savage's outbursts at trial were clearly disrup-tive. But rather than suggest that he was unable to understand the nature and consequences of the proceed-ings, Savage's conduct manifested an intent to intro-duce inadmissible evidence, his reluctance to answer questions on cross-examination, and his frustration with the prosecutor and the progress of his trial.

Ultimately, Savage has not offered enough evidence to suggest that his mental problems were of such a nature that they prevented him from understanding the proceed-ings against him and interfered with his ability to consult with his attorney. Savage's attorney did not ask for a competency hearing and at one point agreed with the district court that Savage "certainly seemed to be aware of what was going on . . . about him." Significant weight is given to counsel's representations concerning his client's competence and counsel's failure to raise the competency issue. *See, e.g.*, *United States v. Downs*, 123

F.3d 637, 641 (7th Cir 1997); *United States v. Morgano*, 39 F.3d 1358, 1374 (7th Cir. 1994). The district court is always in the best position to determine the need for a competency hearing. *Downs*, 123 F.3d at 642. The district court observed Savage's conduct and appropriately gauged whether reasonable cause existed to doubt Savage's competency. Accordingly, we find no error in the district court's decision not to order a mental examination.

## B.  Evidence of Post-July 29, 2003 Threats

Savage also challenges the district court's exclusion of letters that Valdez sent to Savage after July 29, 2003, the date of the drug purchase. Savage argues that the letters, which included threats of physical violence, would lend credibility to Savage's version of events and support his defense of coercion.

The district court found that post-conduct threats would be irrelevant for Savage's coercion defense, because they would have no bearing on Savage's state of mind on July 29, 2003. The court further held that the evidence would only be offered for the inadmissible purpose of showing Valdez's propensity for violent behavior.[1] The

---

[1]  In the course of the deliberations on this matter, the district court inadvertently referred to Valdez as Savage:

> I've ruled . . . that any post July 29th, 2003, statements are not relevant insofar as they could have had any bearing on Mr. Savage's state of mind. I'm talking about statements by Mr. Savage or people associated with Mr. Savage. If it's being offered to show that Mr. Savage was somehow a person of violent behavior. I think there's evidence of that already and his propensity in that regard. I'm not going to let further evidence after the occurrence be admitted before the jury.

(continued...)

court also noted that evidence of Valdez's violent character had already been introduced, and that additional evidence would be confusing to the jury. Later, the district court further discussed why it excluded the evidence:

> Let me also say that I kept that out because I thought that it would just raise unnecessary issues that would confuse the jury, and, secondly, the probative value of the threats from Valdez and his wife are more probative of threatening Mr. Savage to deter him from persisting in prosecuting Mr. Valdez, which at one point appeared to be the case, and really aren't probative of any pre-crime threats towards—any pre-crime coercion of Mr. Savage.

Tr. at 319-20.

We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Luster*, 480 F.3d 551, 556 (7th Cir. 2007). Because we give great deference to the trial judge's evidentiary rulings, we will not reverse unless the record contains no evidence upon which the trial judge rationally could have based his decision. *United States v. Gajo*, 290 F.3d 922, 926 (7th Cir. 2002).

Typically, federal prosecutors employ Rule 404(b) of the Federal Rules of Evidence to introduce evidence of a criminal defendant's prior convictions or other misconduct as proof of that defendant's "motive, opportunity, intent, preparation, plan, knowledge, or identity" with regard to a different crime for which the defendant is being prosecuted. *United States v. Reed*, 259 F.3d 631, 634 (7th Cir. 2001). However, "[e]vidence regarding other

---

[1] (...continued)
Tr. at 234-35. It is clear from the context of the discussion that the court was discussing Valdez's propensity for violence, not Savage's.

crimes is admissible for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him." *Id.* In determining whether to allow a criminal defendant to admit such evidence, known as "reverse 404(b) evidence," a district court must balance "the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time, and confusion of the issues under Rule 403." *United States v. Seals*, 419 F.3d 600, 606 (7th Cir. 2005).

The evidence Savage sought to introduce at his trial, demonstrating that Valdez threatened Savage after July 29, 2003, fits into the category of "reverse 404(b)" evidence. First, we must determine whether the evidence is probative—*i.e.*, whether it makes it more likely than not that Valdez coerced Savage into purchasing the drugs— and, if so, whether its probative value is trumped by Rule 403.

In analyzing the probative value of the proffered evidence, the district court focused heavily on the fact that the threats occurred after July 29, 2003. We note that this fact does not *ipso facto* render the evidence inadmissible under Rule 404(b). We have recognized that Rule 404(b) does not restrict the evidence concerning other acts to events which took place before the alleged crime. *See United States v. Anifowoshe*, 307 F.3d 643, 646-47 (7th Cir. 2002) (observing that "by its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts"); *United States v. Betts*, 16 F.3d 748, 757 (7th Cir. 1994), *abrogated on other grounds by United States v. Mills*, 122 F.3d 346 (7th Cir. 1997); 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5239 (1978 ed. & 2007 supp.). That said, the "chronological relationship between the charged offense and the other act" may play an important role in determining the probative value of such evidence. *Anifowoshe*, 307 F.3d at 647.

In this case, we agree with the district court's underlying conclusion that the probative value of post-conduct threats is somewhat limited. The text of threatening letters—two containing the word "REDRUM," or "murder" backwards, and a third with a threat to "come down there right now and kid napp you and beat you for a weak [sic]"—do not reference the drug deals that Savage argues Valdez coerced him into doing. The threats occurred well after the drug deal, which, though not a dispositive factor, lessens the probative value of the letters. The probability that a jury would view these letters as further support of Savage's coercion defense is slight.

The district court properly weighed this limited value against other important considerations under Rule 403. Because the threats were made at a time when Savage was cooperating with the government against Valdez, the jury may have confused the issue of whether Valdez coerced Savage into ending his cooperation with the government with the issue of whether Valdez coerced Savage into dealing drugs. In addition, at the point in the trial when Savage proffered the post-conduct threats, substantial evidence of Valdez's violent character had already been introduced in Savage's case in chief, as well as the government's. Any further evidence on this point, especially considering its low probative value, seems unnecessary. We find that the court properly exercised its discretion in finding that concerns for confusion of the issues and presentation of cumulative evidence outweighed the limited probative value of the letters.

Even if the evidence involving Valdez's other threats should have been admitted, its exclusion was harmless in light of the overwhelming evidence presented by the government at trial. We will only reverse a defendant's conviction if the erroneous decision by the district court to exclude evidence "had a substantial influence over the jury and the result reached was inconsistent with sub-

stantial justice." *Seals*, 419 F.3d at 607. In assessing the harmlessness of the district court's evidentiary ruling, we consider the "overall strength of the prosecution's case against the defendant." *Id.*

The government introduced Savage's admission to Special Agent Morris that he had purchased the powder and crack cocaine with the intent to sell it. This admission was corroborated by Savage's own testimony to the grand jury.

In his defense, Savage testified that Valdez had forced him to carry out the drug transaction with the threat of physical violence on numerous occasions. However, his testimony regarding the threats was contradicted by Special Agent Brazao and Savage's own expert, Dr. Rubin. Other elements of Savage's testimony, including his denial that he knew that the drugs were crack and his denial of his intent to sell the drugs, contradicted his own grand jury testimony. *In toto*, the evidence against Savage overcomes any doubt that the exclusion of Valdez's other threats led to a result "inconsistent with substantial justice."

Savage argues that the exclusion of the evidence deprived him of his right to present a complete defense. We have held that the "[e]xclusion of evidence which is the only or the primary evidence in support of a defense is deemed to have had a substantial effect on the jury." *Seals*, 419 F.3d at 608. This is not the case here. Savage testified to the existence of the other threats, so the post-conduct threats were not the only evidence in support of his defense. Nor were the post-conduct threats, which were both remote and vague in their meaning, the primary evidence of coercion. Savage's detailed description of the threats on the morning of July 29, 2003 was the primary evidence. The exclusion of Valdez's subsequent threats was not so fundamental to Savage's defense that it had a substantial effect on the jury.

**C.  Obstruction of Justice Enhancement**

Savage's third challenge involves the district court's decision to enhance his sentence by two levels for obstruction of justice. We review *de novo* the adequacy of the district court's obstruction of justice findings and any underlying factual findings for clear error. *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005).

A court may impose a two-level enhancement under U.S.S.G. § 3C1.1 if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." Perjury is the sort of conduct that may warrant an obstruction of justice enhancement. *See United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993); *see also* U.S.S.G. § 3C1.1, cmt. n. 4. Perjury, for enhancement purposes, is defined as giving under oath false testimony concerning a material matter with the willful intent to provide such testimony, rather than as a result of confusion, mistake, or faulty memory. *Dunnigan*, 507 U.S. at 94, 113 S.Ct. 1111 (relying on the definition in the federal criminal perjury statute, 18 U.S.C. § 1621). In order to impose the obstruction enhancement, the district court must make independent findings necessary to establish all of three factual predicates for a finding of perjury (false testimony, materiality, and willful intent). *Id.* at 95, 113 S.Ct. 1111. It is preferable, though not absolutely required, for the court to address each element of the alleged perjury in a separate and clear finding. *Id.* If the court fails to address each element clearly, the enhancement will withstand scrutiny if the court makes a finding that "encompasses all of the factual predicates for the finding of perjury." *Id.*; *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003).

As a threshold matter, the district court did not specifically identify which of the Savage's statements at trial were, in fact, perjurious. We have remanded for resentencing when the district court failed to identify specific statements as perjury. *United States v. McGiffen*, 267 F.3d 581, 591 (7th Cir. 2001); *United States v. Seward*, 272 F.3d 831, 838-39 (7th Cir. 2001). At the sentencing hearing, the government identified two statements as perjury requiring an obstruction enhancement: first, Savage's testimony that on the morning of July 29, 2003, Valdez threatened to shoot Savage if he did not carry out the drug deal; and second, Savage's testimony that he told Dr. Rubin and government agents about this threat. The government elicited testimony from Special Agent Brazao and Dr. Rubin that Savage never mentioned this threat during their discussions with Savage, and Savage did not produce any witnesses to corroborate his testimony. After hearing argument from Savage on the enhancement, the district court found that the adjustment was warranted:

> [C]onsidering his testimony as it was presented on the witness stand and considering his testimony against the other evidence here in the presentence investigation report, it's clear that Mr. Savage did not testify truthfully. . . . He cannot avoid, it seems to me, an adjustment of two levels upward because he has obstructed or attempted to obstruct justice in this case.

Sent. Tr. at 21. After this finding, Savage continued to object to the application of the obstruction enhancement, arguing that a report prepared by Dr. Rubin corroborated Savage's statements. In response, the district court made the following observations:

> I heard what Mr. Savage just said regarding the doctor's statement, but [the government's] points are

well-taken as well. Not even the doctor fully corrobo-
rates or effectively corroborates Mr. Savage's in-court
testimony. I also note that despite ample opportunity
to discuss the facts of this case with the government
prior—while he was cooperating, this issue was never
raised in any regard at all. Now, he says that he told
an agent, but that's not supported anywhere in this
material by the agent's notes or otherwise. So, unfortu-
nately, the testimony is—his statement is not corrobo-
rated, and I'm going to persist in my assessment of his
in-court testimony regarding obstruction.

Sent. Tr. at 22-23.

The record is not entirely clear as to whether the district
court found that Savage's testimony that Valdez threat-
ened him on July 29, 2003 was a lie, or that Savage's
testimony that he later told the government agents
and Dr. Rubin about Valdez's threat was a lie, or both.
While the government points out that the Assistant
United States Attorney at the sentencing hearing argued
that all of these statements were perjury, our inquiry
focuses on the district court's findings, and the district
court did not adopt the government's position in its
entirety. However, the context of the colloquy between
counsel for Savage, the government, and the district court
strongly suggests that the court examined both sets of
statements—*i.e.*, concerning the existence of the July 29,
2003 threat and the later reporting of that threat—
in making its enhancement determinations.

Accepting that the court reviewed these statements, the
court still did not make separate and clear findings as
to each element of perjury. The court clearly found por-
tions of Savage's testimony to be false, but it failed to
discuss the issues of materiality or specific intent to
obstruct justice. Under *Dunnigan*, an obstruction en-
hancement that fails to make separate findings for each

element of perjury will still succeed if the court makes a finding that "encompasses" each element. 507 U.S. at 95, 113 S.Ct. 1111; *United States v. Sheikh*, 367 F.3d 683, 687 (7th Cir. 2004). Arguably, the court's finding that Savage "obstructed or attempted to obstruct justice in this case" encompasses the willful element. The testimony clearly related to the central issue at the trial—whether Savage carried out the drug deal as a response to Valdez's threats—and therefore was material.

The district court's findings on this matter were regrettably slim. However, any error is harmless. The record is clear that Savage willfully lied about material matters when he stated that Savage threatened him on July 29, 2003 and when he stated that he told Dr. Rubin and the government agents about the threats. These statements were contradicted by government witnesses and, more damningly, by Savage's own expert. The lack of more precise findings on the enhancement does not warrant remand for resentencing. *See United States v. Saunders*, 359 F.3d 874, 878-79 (7th Cir. 2004).

## D.  Resentencing Based on *Cunningham*

Savage finally contends, in an argument raised for the first time in his reply brief, that *Cunningham v. California*, ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), precludes district judges from finding facts that may enhance sentences. Regardless of whether Savage forfeited this argument, we rejected this same argument earlier this year. *United States v. Roti*, 484 F.3d 934, 937 (7th. Cir. 2007). Savage acknowledges *Roti* in his brief, but nonetheless asks us to overturn it. We decline to do so.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Savage's conviction and sentence.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*