[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14051
Non-Argument Calendar

_____

D. C. Docket No. 06-00001-CR-1-JTC-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON SOUTH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 8, 2008)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Jason South appeals his convictions for possessing, transporting, and

manufacturing pipe bombs, possession of a firearm by a convicted felon, and possession with intent to distribute methamphetamine. After a thorough review of the record, we affirm.

I.

South was originally indicted for receipt of an unregistered firearm, manufacturing a destructive device, and transporting a destructive device. He agreed to plead guilty to all three counts pursuant to a written plea agreement. The agreement indicated the maximum penalties as to each count of conviction and contained standard language that South would not seek any reduction of sentence and agreed to a maximum sentence of ten years on each count to run concurrently. The parties, however, had scratched out this standard language. The agreement gave no other indication of whether the sentences would run concurrently. At the plea colloquy, the government pointed out that the standard language had been removed and that the parties had agreed that South could argue for a sentence of less than ten years. The court explained that the maximum penalty was ten years as to each count in the indictment, and South indicated that he understood. After South admitted the elements of the offenses, the court accepted the plea.

At sentencing, however, South raised an issue with respect to his plea, explaining that he understood the terms of the agreement to expose him to a

maximum sentence of a total of ten years and not ten years for each count.  He stated that he had rejected an earlier plea offer that included a sentence of ten years for each count with no downward departure, and that the agreement as negotiated enabled him to raise the downward departure issue.  South explained that he now faced 168 to 200 months under the guidelines, which exceeded the amount he believed he faced at the time of the plea colloquy.  South's counsel admitted that he had advised South that the maximum sentence under the plea was ten years with the ability to argue for a downward departure.  South testified that he believed that the terms of the existing plea subjected him to a maximum of ten years and that he would not have entered the plea if he understood he faced 200 months in prison. He stated that he had discussed the plea with counsel and understood the terms to be ten years for all three counts.  South admitted, however, that the government had not told him it would recommend ten years.  According to South, the agreement was unequivocal and the government should be held to specific performance of the terms as he understood them.

The court disagreed that the plea agreement called for a maximum sentence of ten years on all counts and noted that the agreement would not have been binding on the court.  Nevertheless, the court questioned whether the plea was made knowingly and voluntarily in light of Smith's claim and asked the parties for

3

supplemental briefing. In his response, South asserted that his plea was involuntary and required that he be permitted to withdraw his plea. Alternatively, he asserted that the government had breached the plea agreement and requested that the court enforce the terms of the plea agreement as he understood them. The court permitted South to withdraw his plea.

Thereafter, the government filed a superseding indictment, charging South with receipt of unregistered firearms, in violation of 26 U.S.C. § 5861 (Count 1); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 2); manufacturing, possessing, and transporting pipe bombs in violation of 26 U.S.C. §§ 5845 and 5861 (Counts 3 and 4); and possession with intent to distribute at least five grams of methamphetamine, in violation of 21 U.S.C. § 841 (Count 5).[1]

South moved to dismiss the superseding indictment for vindictive prosecution, arguing that the government filed the superseding indictment adding a drug count that was subject to a mandatory life sentence to punish him for withdrawing his earlier plea. He also reiterated that the government had breached the plea agreement.

The magistrate judge recommended denying the motion to dismiss the superseding indictment. The magistrate judge first refused to revisit the issue of

---

[1] The government also filed notice of enhanced penalties under 21 U.S.C. § 851.

4

whether the government had breached the plea agreement. The magistrate judge then concluded that there was no evidence the prosecutor acted vindictively or was trying to punish South for exercising his right to withdraw his plea. The district court adopted the recommendation, over South's objections, and denied the motion to dismiss.

Prior to trial, the government filed notice of its intent to use evidence of prior bad acts under Rule 404(b) to show intent and to rebut any claim of duress or mistake. The evidence cited by the government included prior convictions for possession of a hoax device and a Molotov cocktail. South responded that the evidence was not relevant and showed only a propensity to commit bad acts. He argued that any probative value would be outweighed by prejudice.

South then filed his own notice of "reverse 404(b)" evidence, seeking to admit the criminal records of the two confidential informants, Howard Thrower and Gary Woods, who were involved in his offenses. He alleged that this evidence would relate to his theory of defense and establish that he acted out of duress. According to South, in 2003, Thrower had been arrested for threatening and beating a contractor who was remodeling Thrower's house. Thrower ultimately was convicted of a misdemeanor. Although the terms of his conviction required Thrower to sell his house, Thrower rented the house to South. The government

5

responded that the evidence was inadmissible because it sought to establish that the confidential informant was a violent person who acted in conformity with that character trait. The government also asserted that the evidence was inadmissible under Rules 608 and 609 because the convictions were not felonies and did not involve conduct related to dishonesty. The court reserved its rulings on these two motions. During trial, the court sustained the government's objection to evidence of Thrower's prior convictions as impermissible character evidence that would be used only to show a propensity for violence. The court noted that the evidence would be relevant to South's claim of duress only if South knew of the conviction.

The testimony at trial established the following: Howard Thrower and Gary Woods worked as confidential informants with the FBI. Thrower managed adult entertainment clubs where Woods also worked a bouncer. In 2005, South began to frequent one of the clubs, spending a significant amount of money. Thrower wanted to encourage a good relationship with a big spender and arranged for South to have access to the club's limousine driven by Woods. Woods then learned that South had access to drugs and money. Woods and Thrower contacted the FBI, who enlisted ATF agent Brett Turner to go undercover and attempt to purchase guns from South. Turner posed as an out-of-town associate of Thrower who was seeking firearms to handle a problem he was having with some gangs. Turner and

6

Woods met with South and South provided Turner with several weapons. South also offered to assist Turner in whatever action he planned that required the firearms. South did not request any payment for the weapons, but Turner insisted that he take about $500.

After this initial meeting, Turner contacted South again in an attempt to obtain hand grenades. In an attempt to limit contact between Thrower, Woods, and South, Turner informed South that Woods was angry at South and he told South not to contact Thrower and Woods. South questioned Turner about the type of device he needed and, based on Turner's responses, South mentioned a pipe bomb he could "improvise," which Turner understood to mean South could manufacture the bomb. However, South indicated that he would need to buy the materials and would go to multiple stores to avoid arousing suspicion. The next time Turner and South met, South handed Turner three pipe bombs. South then told Turner about stealing drugs and firearms. Turner arranged another transaction to purchase drugs and later obtained marijuana and methamphetamine from South.

The government admitted into evidence tape recordings of the transactions and phone calls between Turner and South. In one call between South and Thrower, South made reference to a problem with Woods in which Woods came to South's home and pointed a gun at South and his girlfriend.

Thrower and Woods both testified, confirming their involvement as confidential informants. Thrower also testified about the home he rented to South during the investigation and the debt South owed as a result of the rental and South's tab at the club. Thrower explained that he and South executed a lease/purchase agreement for Thrower's house in which South was to pay an initial deposit of about $20,500 and monthly rent of $4,250. South paid only about $8,000 and was in debt to Thrower for the rest. As a result of this debt, South signed over the title to his car to Woods, but Woods did not take possession of the car and South continued to drive it. Thrower also admitted he had a prior conviction for drug charges and a pending misdemeanor charge.[2]

Woods admitted that he had a prior misdemeanor conviction that predated the offenses in this case. He denied that he ever threatened South or held a gun to South's head, although he admitted that he carried a weapon.

The government then renewed its motion to admit Rule 404(b) evidence concerning South's prior convictions for possession of a hoax device and a Molotov cocktail in 2000. The government alleged that the evidence was relevant to show intent and absence of mistake and to rebut South's claim of duress. South objected on the grounds that the Molotov cocktail was too dissimilar to be relevant,

---

[2] South again sought to introduce the reverse 404(b) evidence of Thrower's prior conviction, but the court overruled the objection.

8

the evidence was only being admitted to show a propensity for bad acts, and there was no evidence to establish that the hoax device was similar because the agent involved in the earlier case had died. The government noted that South had pleaded guilty to possession of a hoax device, and that it would present evidence to show the devices were similar based on photographs and expert testimony. The court overruled South's objections and admitted the evidence as relevant to show intent.

Cobb County bomb squad commander Duane Morris testified about explosive devices found in South's home in 2000 during a police search. The devices appeared to be homemade and consisted of a cardboard tube with a fuse. The court issued a limiting instruction that the evidence was admissible only to show South's intent or state of mind. The government then called several expert witnesses to explain the alleged similarities between the hoax devices in 2000 and the instant offenses. Because the agent involved in the investigation in 2000 had died, the government proffered the testimony of these experts based on photographs and reports.

ATF agent Shawn Lee testified that he analyzed the pipe bombs in the instant case and determined them to be functional devices using PVC pipes, epoxy, explosive powder, metal bbs, screws, nails, and percussion caps. Viewing pictures

of the devices found in 2000, Lee could not say whether the items were legally manufactured fireworks, but he could confirm that the PVC exhibits he examined were not fireworks. ATF agent Jason Harrell confirmed that the devices in the instant case were explosives designed for use as weapons. On cross-examination, Harrell reviewed pictures of the devices seized in 2000, but he could not confirm, based on the pictures alone, what the propellant would have been and whether the devices were bombs.

ATF explosives enforcement officer Walter Conklin confirmed that the bombs South gave to Turner were functional pipe bombs. He explained that to make the bomb effective, it should be sealed on both ends with epoxy, and that the PVC pipe could do significant damage, even without the addition of shrapnel from metal screws, nails, or bbs. Conklin stated that there was no legal or commercial use for such destructive devices. Conklin then testified about the devices seized in 2000 based on reports from the investigating agent who had since died. Viewing the pictures of those devices, Conklin stated that the devices were improvised explosive devices that did not contain any fragmentation pieces. He explained that the devices were similar to the devices in 2005 in that both were cylindrical containers filed with explosive composition and a burning-type fuse sealed at each end. Conklin opined that, hypothetically, if the same person made both sets of

10

devices, the person had become more sophisticated by adding items capable of fragmentation and damage. Conklin, however, was unable to confirm the substance inside the containers, stating that it appeared to be flash powder like that used in fireworks, although in greater quantity.

South did not testify. South requested that the jury be instructed on duress, but the court declined to give the instruction because there was no evidence to support the theory. The jury convicted South on all counts and the court sentenced South to 300 months' imprisonment, which was broken down to 120 months each for Counts 1 through 4, to be served concurrently, and 180 months on Count 5, to run consecutively to the other 4 counts. South now appeals, arguing that the court erred by (1) refusing to enforce specific performance of the plea agreement; (2) denying the motion to dismiss the superseding indictment; (3) admitting Rule 404(b) evidence of South's prior convictions and excluding evidence of Thrower's prior conviction; and (4) refusing to instruct the jury on duress.

## II.

### A. Plea Agreement

South argues that the district court abused its discretion by refusing to enforce the terms of the plea agreement after the government breached the plea. He contends that the language in the plea agreement can only be read to limit his

sentences to a maximum term of ten years, and that any ambiguity must be construed in his favor.

We review de novo whether the government breached a plea agreement. United States v. De La Garza, 516 F.3d 1266, 1270 (11th Cir. 2008); United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998). The district court's factual findings regarding the scope of the agreement will be set aside only if they are clearly erroneous. United States v. Al-Arian, 514 F.3d 1184, 1191 (11th Cir. 2008); Raulerson v. United States, 901 F.2d 1009, 1012 (11th Cir. 1990).

This court views a plea agreement as a contract between the government and the defendant and any material promise made by the government to induce the defendant to plead guilty is binding and must be fulfilled. United States v. Copeland, 381 F.3d 1101, 1105 (11th Cir. 2004) (citing Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)). "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996). This court has held that the government breaches a plea agreement when it "unequivocally promise[s]" that it would make a particular sentencing recommendation, and then advocates a position incompatible with the fulfillment of that promise. Id. at 370-371. "Furthermore, whether the government

12

violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." Id. at 370 (quotation omitted). "The court must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." Al-Arian, 514 F.3d at 1191 (citation omitted). The court must use objective standards to resolve a dispute over the meaning of terms in a plea agreement.[3] Id.

Here, the district court properly concluded that the government had not breached the plea agreement. First, at the change-of-plea hearing, the court explained the possible penalties as ten years' imprisonment on each count and South indicated that he understood. "There is a strong presumption that the statements made during the [plea] colloquy are true." United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).

Second, at the change-of-plea hearing, the government explained that the plea agreement's standard language had been removed and the parties had agreed that South could argue for a sentence below ten years at sentencing. Nothing in the agreement required the government to recommend a specific sentence, nor did the agreement promise concurrent sentences. Copeland, 381 F.3d at 1105.

_____

[3] When the terms of an agreement are ambiguous or government overreaching is alleged, the court may consider parole evidence. Raulerson, 901 F.2d at 1012. Here, however, the terms are not ambiguous, as the agreement merely permitted South to argue for a sentence below the ten year maximum and nothing in the agreement bound the government to recommend a specific sentence.

13

Moreover, at the sentencing hearing, South testified that the government had not promised a sentence of ten years, and counsel explained that he had informed South the maximum term of imprisonment was ten years rather than ten years as to each count. Thus, to the extent that the terms were not as South understood them to be, the problem appears to lie with South's counsel, and there was no evidence that the government breached the plea agreement. Accordingly, the court properly permitted South to withdraw his plea rather than requiring specific performance.

B. Indictment

South next argues that the government brought the superseding indictment as punishment after he withdrew his plea. He contends that government's reasons for not charging the firearm and drug offenses earlier are ridiculous and thus are evidence of the prosecutor's vindictiveness. Although South concedes that there is no presumption of vindictiveness when the new charges are brought pre-trial, he contends the presumption can exist under circumstances such as those present in his case. Nevertheless, South asserts that he can establish actual vindictiveness based on the prosecutor's animus towards him.

We review de novo the legal question of whether a presumption of prosecutorial vindictiveness arises under the Supreme Court's case law. United States v. Barner, 441 F.3d 1310, 1315 (11th Cir. 2006). The district court's factual

14

findings concerning prosecutorial vindictiveness are reviewed for clear error.  Id.

In Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978), the Supreme Court explained that, although there are due process concerns when a defendant is punished for exercising his rights, those concerns do not exist in the context of plea negotiations because the defendant is free to accept or reject the plea.  Thus, a prosecutor is free to threaten to bring additional charges unless the defendant enters a plea.  434 U.S. at 363-364.

Although there is a presumption of vindictiveness that arises when new charges are brought post-trial, there is no such presumption in the pre-trial context.[4]  Barner, 441 F.3d at 1316.  Thus, to prevail, South must establish actual vindictiveness.  Id. at 1317.

South cannot make a showing of actual vindictiveness.  "[A]s long as the prosecutor has probable cause to believe that an accused has committed an offense defined by statute, the decision whether or not to prosecute, and if so, what charge to bring before the grand jury, rests in the prosecutor's discretion."  Bordenkircher, 434 U.S. at 365; United States v. Cole, 755 F.2d 748, 758 (11th Cir. 1985).  There is no constitutional due process violation when the government decides to add new charges after the defendant refuses a plea deal.  See Bordenkircher, 434 U.S. at

---

[4]  Although the Supreme Court did not rule out the possibility that a case could present additional factors that would make it appropriate to use the presumption in a pre-trial setting, the facts in this case do not warrant any such presumption.  See Barner, 441 F.3d at 1317-1318.

15

363. Without more, South has not shown that the government acted with actual vindictiveness. See Cole, 755 F.2d at 758. Accordingly, the district court properly denied the motion to dismiss the superseding indictment.

C. Rule 404(b) Evidence

1. South's prior convictions

South argues that the court erred by admitting evidence under Rule 404(b) because the testimony was not relevant and had no other purpose but to establish his propensity to commit crimes. He notes that the testimony did not establish that the hoax devices for which he was convicted were similar to the pipe bombs in the instant case, and he explains that he never disputed making the pipe bombs for which he was charged but merely asserted that he made them under duress.

A district court's decision regarding the admissibility of evidence is reviewed for an abuse of discretion. United States v. Desero, 518 F.3d 1250, 1254 (11th Cir. 2008). "A district court's erroneous admission of evidence does not warrant reversal if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." United States v. Fortenberry, 971 F.2d 717, 722 (11th Cir. 1992).

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

therewith. It may, however be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). To be admissible under Rule 404(b), "(1) the evidence must be relevant to an issue other than the defendant's character; (2) the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." United States v. Matthews, 431 F.3d 1296, 1310-1311 (11th Cir. 2005) (internal quotations omitted).

Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. This determination "calls for a 'common sense assessment of all the circumstances surrounding the extrinsic offense,' including prosecutorial need, overall similarity between extrinsic act and the charged offense, as well as temporal remoteness." United States v. Jernigan, 341 F.3d 1273, 1282 (11th Cir. 2003) (citation omitted). Although the district court has a great degree of discretion in weighing probative value and prejudice under Rule 403, this court has

"also recognized that Rule 403 is 'an extraordinary remedy which the district court should invoke sparingly and [t]he balance . . . should be struck in favor of admissibility.'" United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003) (internal citations omitted). The risk of undue prejudice can be reduced by a district court's limiting instruction, and this court will presume the jury followed the court's instructions. United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005); United States v. Wilson, 149 F.3d 1298, 1302 (11th Cir. 1998).

Here, South complains of the court's admission of his prior conviction for possession of a hoax device. The testimony at trial established that South was convicted of this offense in 2000. None of the witnesses, however, could confirm that the devices in 2000 and the pipe bombs in the instant case were identical, or even very similar. The court admitted the evidence to show intent and to negate South's claims of duress, and the court issued a limiting instruction on the jury's consideration of this evidence. On cross-examination, counsel was able to elicit testimony that the expert could not confirm that the hoax devices were the same as the pipe bombs because they lacked information about the hoax devices. This testimony would not have confused or mislead the jury. In light of these facts, South cannot show error in the admission of the evidence or that the prejudicial nature outweighed any probative value.

18

Even if the court erred, we conclude that the error was harmless. The government had overwhelming evidence against South in the form of video and audio tapes, as well as the testimony of two confidential informants and an undercover officer.

### 2. Thrower's prior conviction

South further argues that the court erred by refusing to admit his "reverse" 404(b) evidence concerning Thrower's prior convictions because the evidence was admissible under Rule 404(b) and Rule 608(b). According to South, the evidence was admissible to establish his duress defense, and the probative value outweighed any possible prejudice. Alternatively, South asserts that the evidence was admissible to impeach Thrower and to explain the circumstances leading to South's rental of Thrower's home. South contends the testimony was probative of Thrower's lack of truthfulness and thus was admissible under Rule 608(b).

A district court's rulings on the permissible scope of cross-examination are reviewed for abuse of discretion. United States v. Jones, 913 F.2d 1552, 1564 (11th Cir. 1990) (citation omitted).

"Unlike the usual circumstance in which the prosecution seeks to introduce evidence of the accused's conduct on another occasion, the evidence in question was offered by the defense and involves behavior of a witness other than a

19

defendant. Although the standard for admission is relaxed when the evidence is offered by a defendant, United States v. McClure, 546 F.2d 670 (5th Cir. 1977),[5] the party advancing the evidence must demonstrate that it is not offered "to prove the character of a person in order to show action in conformity therewith."[6] See United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989). If the evidence is shown to have a special relevance to a disputed issue, the court must balance the probative value against the possibility of unfair prejudice. Id. But "if there is simply no other practical means to prove the point, then the need factor points strongly toward receipt" of such evidence. Cohen, 888 F.2d at 776.

Here, the court did not abuse its discretion. The evidence would not have established that South did not commit the crimes, especially in light of the recorded conversations admitted as evidence. Cf. Cohen, 888 F.2d at 772 (admitting such evidence to show that the witness had the capacity to commit the crimes without the defendant's assistance or involvement). Thus, it appears that the purpose of this evidence was to show that Thrower acted in conformity with his prior bad conduct. Such evidence is not admissible under Rule 404(b).

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

[6] Other circuits refer to this type of evidence as "reverse 404(b)" evidence. See, e.g., United States v. Savage, 505 F.3d 754 (7th Cir. 2007); United States v. Williams, 458 F.3d 312 (3d Cir. 2006); United States v. Montelongo, 420 F.3d 1169 (10th Cir. 2005); United States v. Lucas, 357 F.3d 599 (6th Cir. 2004); United States v. Hamilton, 48 F.3d 149 (5th Cir. 1995).

20

Moreover, the evidence was not admissible under Rule 608(b), as nothing about the conviction was relevant to truthfulness. See Fed. R. Evid. 608(b).[7] Thrower's prior convictions were for the misdemeanor offenses of simple assault and battery. These convictions are not related to offenses involving truthfulness. Thus, the prior convictions were not admissible under Rule 608(b).

Finally, even if the district court abused its discretion, the error was harmless. South sought to introduce evidence of Thrower's prior misdemeanor conviction to establish his duress defense. The prior conviction involved an assault on a contractor working on Thrower's home. To establish a defense of duress, South had to show "(1) he acted under an immediate threat of death or serious bodily injury, (2) he had a well-grounded fear the threat would be carried out, and (3) he had no reasonable opportunity to escape or inform authorities." United States v. Wattleton, 296 F.3d 1184, 1196 n.20 (11th Cir. 2002); United States v. Alzate, 47 F.3d 1103, 1104 (11th Cir. 1995). Notably, South did not testify at trial, and there was no evidence that he was aware of Thrower's prior conviction or an alleged propensity for violence. Even if he could show his knowledge of the prior conviction, South could not establish the other elements of duress; there was no immediate threat and South had many opportunities to go to authorities. Thus, any

_____

[7] Although South originally argued the conviction was admissible under Fed. R. Evid. 609, he does not raise that issue on appeal and thus has abandoned it. United States v. Smith, 416 F.3d 1350, 1354 (11th Cir. 2005).

21

error in the exclusion of this evidence was harmless.

D. Duress

Finally, South argues that the court erred by failing to instruct the jury on duress because he put forth sufficient evidence to establish the defense. Although he concedes that the immediacy prong is attenuated, South contends that other circuits have held longer periods of time to be acceptable under this element.

We review a district court's refusal to include a defendant's requested jury instruction for an abuse of discretion. See United States v. Sirang, 70 F.3d 588, 594 (11th Cir. 1995).

A defendant is entitled to have the district court instruct the jury on a defense theory "only if that theory has an evidentiary foundation and the requested instruction presents a cognizable legal defense." United States v. Fernandez, 837 F.2d 1031, 1035 (11th Cir. 1988). Because duress is an affirmative defense, the defendant bears the initial burden to offer evidence of each of the elements of the defense. See United States v. Bailey, 444 U.S. 394, 412-13, 100 S.Ct. 624, 635-36, 62 L.Ed.2d 575 (1980); United States v. Montgomery, 772 F.2d 733, 736 (11th Cir. 1985).

South was not entitled to the jury instruction because he failed to meet his burden of proof to show either an immediate fear or the inability to escape or

22

contact authorities. Although there was some evidence from a tapped phone call between South and Thrower in which South stated that Woods had pointed a gun at South and his girlfriend, this single incident does not establish that South faced immediate danger throughout the offenses. Moreover, there was no evidence to establish that South knew of Thrower's prior conviction, and Thrower's prior offense occurred in 2003, well before the offenses in this case and before South was acquainted with Thrower. Thus, because South failed to establish the elements of duress, the court properly denied the instruction.

Accordingly, for the foregoing reasons, we AFFIRM South's convictions.