**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert COHEN and Samuel Cohen,**
**Defendants–Appellants.**

**No. 88–8386.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1989.

---

E. David Rosen, Miami, Fla., Steven H. Sadow, Maloy Sadow & Jenkins, Atlanta, Ga., Joseph Beeler, Miami, Fla., for defendants-appellants.

Michael J. O'Leary, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before VANCE and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

Robert M. Cohen and Sam L. Cohen appeal from their convictions for wire fraud, conspiracy, and tax evasion. For the reasons recited herein, the judgment of the district court is REVERSED and the case is REMANDED for a new trial.

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

## PROCEDURAL HISTORY

On September 25, 1987, Robert Cohen, Sam Cohen, and Jerry Faw were indicted for wire fraud, conspiracy, and tax evasion. On November 6, Jerry Faw pled guilty to conspiracy to commit wire fraud and tax evasion and was sentenced to four years imprisonment to be followed by five years of probation. On December 23, 1987, a superseding indictment charged the Cohens with two counts of filing false tax returns, four counts of wire fraud, and one count of conspiracy to commit wire fraud and to defraud the United States. They were tried and convicted on all counts.

Each appellant received a sentence of six years imprisonment to be followed by five years probation. As a special condition of probation, the court ordered that each pay restitution to the Walter Heller Company in the amount of $180,000.00 in addition to all taxes owed by the company to the Internal Revenue Service.

The appellants urge three errors as a basis for reversal. They insist that the trial court erred when, during closing arguments, it admitted evidence of Faw's guilty plea which, to that point, had been excluded. The timing of this admission, the appellants argue, denied them the right of cross examination. The appellants also maintain that the trial court erred when it excluded evidence of Faw's prior involvement in similar conduct. These two errors, taken together, combined to deprive them of a fair trial. Finally, the appellants challenge the court's order of restitution as a condition of probation and argue that the court should have first determined the actual loss incurred by the victim or the actual taxes owed to the IRS. Although we find that admission of evidence of Faw's plea agreement was not an error, the court deprived the Cohens of an adequate defense when it refused to allow evidence of Faw's prior conduct. For that reason

the judgment of the district court is reversed and the case remanded for a new trial. Because the appellants will receive a new trial it is unnecessary to consider the issue of restitution.

## FACTS

Using tufting machines to weave yarn, the Phoenix Mill ("Phoenix") produced carpet in its Dalton, Georgia facility from 1979 through 1982. Once the carpet was woven, it was sent to outside jobbers who dyed it and applied its backing.[1] After completion, the carpet was returned to Phoenix. Phoenix sold it to distributors for resale to retailers.

An important part of the manufacturing process and the industry at large is the financing or "factoring" of the different phases of production. An organization known as a factoring company advances money to each phase.[2] The Walter Heller Company ("Heller") is in the business of "factoring" and in this case provided the financing for Phoenix. In 1980, Phoenix began to experience financial difficulties and in May of that year owed Heller over 6 million dollars. Heller sought new management for its company.

The Cohens owned a carpet distributorship in Hollywood, Florida known as Gayla Carpets which purchased 75% of Phoenix's output. Michael Daidone, Heller's field representative, approached the Cohens in the winter of 1980 to offer them the management of Phoenix and an "ownership" interest. Jerry Faw, who was then serving as vice-president of Phoenix under Joseph Richardson, was to be installed as the new president.

Faw testified that the Cohens were only willing to take over Phoenix if they could "steal a little" from the company. They instructed Faw to make an arrangement with the carpet finishers that serviced

---

1. Phoenix used Reliance Industries, B & D Carpet Finishing, and Masterpiece Finishers as finishers for its carpeting.

2. When a finisher bills the manufacturer it assigns the receivable to a factor. The factor pays the finisher less interest and costs and looks to

the manufacturer for payment. The factor also charges the manufacturer costs and substantial interest. When the manufacturer sells its product, its receivable is assigned to a factor who pays the manufacturer less costs and interest and looks to the distributor for payment.

Phoenix. Faw immediately established a "kick-back" from at least three of Phoenix's finishers including Reliance Industries, B & D Carpet Finishing Company, and Masterpiece Finishing. The finishers overcharged Phoenix and then kicked back the excess. Because Heller financed Phoenix's production process, Heller paid the bills and hence the overcharges. Faw, Daidone, and the Cohens were to share equally in the spoils but, when Daidone was fired in March of 1982, the money was divided among Faw and the Cohens in equal parts.

## I. PLEA AGREEMENT

Jerry Faw entered into a plea agreement a condition of which required that he testify truthfully at trial. He was sentenced under Rule 35 of the Federal Rules of Criminal Procedure[3] and testified against the Cohens. When the government announced its intention of introducing Faw's plea agreement into evidence, the defense strenuously objected. The objection was sustained and the court excluded from evidence any mention of Faw's agreement or sentence.

In his opening statement, counsel for Robert Cohen stated:

We will attempt to show you from this point on that the charges are not based on true facts but are based on the testimony of witnesses that have a reason, a motive for testifying falsely. That's the essence of what we will present to you through our evidence....

Now, Jerry Faw got caught at what he did. [A]t that point in time, Jerry Faw started thinking, I'm not going to be able to pay $400,00. Someone else is going to have to take all of this. So then the scheme to point the finger at other people began to take rise.

And these are the witnesses that the Government is going to ask you in closing argument to believe. Every one has a motive to deal for himself, each and

every one. And the Judge will instruct you, I believe, on final argument—final instructions that when there is a motive like this, you've got to give careful, special scrutiny to what they have to say because if the government didn't like what they had to say, they'd be sitting where the Cohens are sitting.

Counsel for Sam Cohen followed this opening statement with:

And running this business in Dalton was Jerry Faw and his cohorts up in Dalton, and they could do anything they chose. And when push came to shove, when these gentlemen and their various agencies stepped in and conducted an investigation, and I suggest that at the behest of a multi, multi-million dollar company of Heller, they needed some fall people. Well, are you going to fall on your friends in your little community with the camaraderie that existed up there in Dalton, or are you going to pick on two people, so called outsiders in Fort Lauderdale who had nothing to do with actual day-to-day operation.

Just as certain as [the prosecution] suggested to you that at the conclusion of this case you would find either of the Cohens guilty, I respectfully suggest to you that you're not going to buy the pig in poke that he is selling, and you're not going to believe witnesses who have their own benefits and reasons to perjure themselves, and you'll see their perjury.

The issue of admission of the plea agreement was again raised by the government after Jerry Faw had testified. The government proposed recalling him to question him about the agreement but the defense objected that, had they known earlier of this evidence, their cross examination of Faw and the other Dalton witnesses would have been different. The court again excluded the evidence but stated:

3. Rule 35(b) provides for a correction of sentence for changed circumstances: "The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code." FED.R.CRIM.P. 35(b).

I think that I'm going to leave the record where it is, gentlemen, but I will tell you now that there is a doctrine of fair reply in closing argument and if there are the generalized statements in closing argument that appear in opening statement, if you are not absolutely precise, I am going to let the prosecutor tell them all. Is that clear?

If I hear the word "they" with reference to lying one time, [Mr. prosecutor], have at it.... I said in closing argument, if I hear a general allegation against the incredibility of the witnesses from Dalton, of the government witnesses generally— you're in a position where you have got to argue clearly to this jury that Faw is a liar because of his inconsistencies and not because of any treatment to the government, and any inference to the contrary will allow [the prosecutor] to read the plea bargain to the jury.

In his closing argument, counsel for Robert Cohen asked "Why do they do that? ... Is there another reason that just hasn't come to light?" Again he argued that "The prosecutor asked you, well, why would they lie? Well, he first told you something different. He said that they were all criminals, but not a single one has been prosecuted." On the government's motion and over objection of the appellants' counsel, the court allowed the government to use the evidence of the plea agreement and the defense was given ten extra minutes to argue in rebuttal.

The appellants argue that, although the trial court has discretion to reopen a case to admit additional evidence, a court abuses its discretion when a defendant is able to show resulting prejudice. In this instance, the appellants were denied the opportunity to cross examine Faw and the other Dalton witnesses on the newly admitted evidence and were thus severely prejudiced. In addition, the appellants continue, such failure to allow cross examination denied the appellants their sixth amendment right of cross examination and the fundamental right to present a defense.

The government argues that the trial court did not abuse its discretion when it reopened the case to admit the evidence of Faw's guilty plea. The plea agreement was admissible based solely upon defense counsel's remarks made during opening statements. Nonetheless, the defense chose a strategy that sought exclusion of the evidence and was successful. Although the court repeatedly cautioned counsel that the plea agreement would be admitted if any references were made to Faw's credibility and motivation for testifying, they chose to forego cross examination and instead used the closing argument as an opportunity to imply that Faw lied. The result of counsel's tactics left an impression with the jury that Faw had not been prosecuted. Despite the court's repeated cautions, it allowed defense counsel additional time to argue to the jury the effects of the plea agreement.

■ Absent an abuse of discretion, evidentiary rulings of the trial court will stand. *United States v. Williams*, 875 F.2d 846, 852 (11th Cir.1989); *United States v. Darwin*, 757 F.2d 1193, 1202 (11th Cir.1985); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983).

When the credibility of a co-defendant witness has been attacked, the prosecution may offer evidence of that witness's plea agreement. *United States v. Dennis*, 786 F.2d 1029, 1046–47 (11th Cir.1986); *see also United States v. Baez*, 703 F.2d 453, 455 (10th Cir.1983) ("If a co-defendant testifies ... either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the co-defendant's credibility as a witness.").

■ In general, statements contained in a plea agreement that require a witness to testify truthfully should not be used during direct examination and may be used on re-direct only if the credibility of the witness is attacked on cross examination. *United States v. Cruz*, 805 F.2d 1464, 1480 (11th Cir.1986); *United States v. Hilton*, 772 F.2d 783, 787 (11th Cir.1985). An extension of this rule was adopted by the Eleventh Circuit in *Cruz*, and allows the prosecutor to elicit such testimony about the truth telling requirement in the plea agreement on direct examination when the

defense attacks the witness's credibility in its opening statement. 805 F.2d at 1480 (citing *United States v. Smith*, 778 F.2d 925, 928 (2d Cir.1985)).

In their opening statements, defense counsel attacked Faw's credibility. Despite this open challenge, the trial court excluded the evidence. When Faw's credibility was challenged on cross examination, the trial court again excluded the evidence on defense counsels' representation that the cross examination would have been different had they been aware that the plea agreement would have been admitted. Finally, the court admitted the evidence when Faw's credibility was attacked in closing arguments.

■ The decision to reopen a case to introduce evidence after the parties have rested is committed to the sound discretion of the district court. *United States v. Faul*, 748 F.2d 1204, 1218 (8th Cir.1984) (citations omitted). The *Faul* court considered as relevant: (1) whether the evidence caused surprise to the defendant; (2) whether the defendant was given an opportunity to meet the proof; and (3) whether the evidence was more detrimental to the defendant because of the order in which it was introduced. *Id.* (citing *United States v. Webb*, 533 F.2d 391, 395 (8th Cir.1986)).

The element of surprise is absent from this case. The defense was aware of the evidence from the outset and had ample opportunity to meet it. In fact, it was excluded upon their request. The appellants argue that the evidence of the plea agreement was more detrimental because it was introduced during the prosecutor's closing argument and they were unable to cross examine Jerry Faw about its terms.

The defense insisted on the exclusion of evidence of the plea agreement and then invited the jury to an incorrect inference from its omission. In *United States v. De Parias*, 805 F.2d 1447 (11th Cir.1986), the defendant objected when counsel for his codefendant attempted to cross examine the government's witness about a prior crime. The court found that, under the doctrine of *United States v. Gibson*, 536 F.2d 1110, 1112 (5th Cir.1976) (per curiam),

the defendant was estopped from complaining about his failure to cross examine because the court had acceded to his request. *De Parias*, 805 F.2d at 1451 n. 1.

■ Cross-examination is vital to an accused's right to confront witnesses. But it is not limitless and cross-examination relating to credibility is committed to the sound discretion of the court. *Darwin*, 757 F.2d at 1202 (citing *United States v. Holman*, 680 F.2d 1340 (11th Cir.1982)). The defense was afforded numerous opportunities to cross examine Faw, opportunities which they chose to forego. In addition, they were given an opportunity during closing argument to meet the evidence. Because the court did not abuse its discretion in reopening the case and admitting evidence of the plea agreement, the appellants' challenge is rejected.

## II. PRIOR BAD ACTS

During cross examination and in its case in chief, the defense, pursuant to Rule 404(b) of the Federal Rules of Evidence, sought to question Jerry Faw about a prior business relationship that included cash sales of Phoenix yarn to Roland Morrison. The defense was prepared to demonstrate that Faw engaged in cash sales of creel belonging to Phoenix without the knowledge of the then president, Joseph Richardson. The court ruled that the questioning was outside the scope of the direct examination and was irrelevant to the issues before the court.

The appellants urge that the failure to admit this evidence was reversible error. The theory of defense was based upon an assertion that Faw and Michael Daidone concocted and executed the fraudulent scheme without the appellants' knowledge or participation. Faw's involvement in similar fraudulent conduct prior to his association with the appellants was critical to support this argument.

When the defense was blocked in its efforts to introduce the evidence of Faw's prior conduct through Rule 404(b), it attempted to introduce it under Rule 608(b) as impeachment evidence. Rule 608(b) al-

lows a party to inquire into specific instances of the conduct of a witness on cross examination if that conduct is probative of truthfulness or untruthfulness. The court refused to allow the defense to cross examine Faw on this point and the appellants argue that exclusion of this vital evidence was an abuse of discretion and a denial of their right to present a defense.

■ The government argues incorrectly that a party seeking the admission of evidence of other crimes or bad acts must prove such acts by clear and convincing evidence. The Supreme Court clarified the standard in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1501–02, 99 L.Ed.2d 771 (1988) and decided that such evidence should be admitted if sufficient evidence would support a finding by the jury that the person committed the act. In addition, the government contends that the evidence is wholly irrelevant to any issue in the case because it was never disputed that Jerry Faw was in a position which would allow him to engage in fraudulent conduct.

*Rule 404(b):*

■ Rule 404(b) of the Federal Rules of Evidence regulates the admission of evidence of other crimes, wrongs, or acts:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b). The rule is one of inclusion which allows such evidence unless it tends to prove only criminal propensity. *See United States v. Zeuli*, 725 F.2d 813, 816 (1st Cir.1984); *United States v. Ford*, 632 F.2d 1354, 1375 (9th Cir.1980). The list provided by the rule is not exhaustive and "the range of relevancy outside the ban is almost infinite...." McCormick, Evidence § 190 at 448 (Cleary ed. 1972).

■ Unlike the usual circumstance in which the prosecution seeks to introduce evidence of the accused's conduct on another occasion, the evidence in question was offered by the defense and involves behavior of a witness other than a defendant. Although the standard for admission is relaxed when the evidence is offered by a defendant, *United States v. McClure*, 546 F.2d 670 (5th Cir.1977), the party advancing the evidence must demonstrate that it is not offered "to prove the character of a person in order to show action in conformity therewith." When the proffered evidence is shown to have a special relevance to a disputed issue, the court must balance the probative value against the possibility of unfair prejudice.

The trial court has discretion to exclude testimony and the court's decision must be upheld absent an abuse of that discretion. *Russell*, 703 F.2d 1243. But "if there is simply no other practical means to prove the point, then the need factor points strongly toward receipt" of such evidence. 2 Louisell & Mueller, Federal Evidence § 140 at 116–17 (1978).

■ In this case, the defense sought to show that the government's witness was capable of concocting and managing the fraudulent scheme without the Cohens' participation. Faw was the government's primary witness to the extent of that participation. Evidence that he had the opportunity and ability to concoct and conduct the fraudulent scheme without the aid or participation of the Cohens was relevant to the issue of their guilt. *See, e.g., United States v. Garcia*, 880 F.2d 1277, 1278 (11th Cir.1989) (evidence of prior forgery demonstrated an ability to prepare false documents and was relevant to charge of making a false statement). No other practical means of demonstrating this point appears to have been available to the defense.

The evidence is not of the type to inflame the jury's senses. The fourth and the first circuits have sanctioned exclusion only " 'in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.' " *See Zeuli*, 725 F.2d at 817 (quoting with approval *United States v. Masters*, 622 F.2d 83, 87 (4th Cir.1980)). In *Huddleston*, the Supreme Court noted

that "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." 108 S.Ct. at 1501. When the defendant offers similar acts evidence of a witness to prove a fact pertinent to the defense, the normal risk of prejudice is absent. *See United States v. Aboumoussallem*, 726 F.2d 906, 911–12 (2d Cir.1984). In the present case, introduction of the proffered evidence would not have clashed with the policy of keeping scandalous or prejudicial evidence from the jury.

The trial court's discretion does not extend to exclusion of crucial relevant evidence. *United States v. Riley*, 550 F.2d 233, 237 (5th Cir.1977); *see also United States v. Terebecki*, 692 F.2d 1345, 1351 (11th Cir.1982) (Hill, J., dissenting). In this case, the evidence was crucial to the defense and its exclusion was error.

By preventing the introduction of relevant evidence of the prior conduct of an essential government witness, the court deprived the Cohens from presenting an adequate defense and thus deprived them of a fair trial. We have no alternative but to require a new trial.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for a new trial.