UNITED STATES of America,
Plaintiff–Appellee,

v.

Charlotte Stephens ETHRIDGE, Champ
Drew Ethridge, Defendants–
Appellants.

No. 90–8655.

United States Court of Appeals,
Eleventh Circuit.

Dec. 17, 1991.

Joseph H. Gibson, Wunder, Ryan, Cannon & Thelen, Washington, D.C., for defendants-appellants.

John L. Lynch, Asst. U.S. Atty., G.F. Peterman, III, Macon, Ga., for plaintiff-appellee.

Before FAY and BIRCH, Circuit Judges, and KAUFMAN *, Senior District Judge.

PER CURIAM:

Charlotte and Champ Ethridge were convicted of mail fraud and conspiracy to commit mail fraud based on their filing of allegedly fraudulent insurance claims. On appeal, they argue that (1) the evidence was insufficient to prove they devised a scheme to defraud the insurance company of money, (2) evidence that the valid portions of the claims exceeded the policy lim-

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

its was improperly excluded, and (3) the Ethridges were not sentenced appropriately under the sentencing guidelines. For the reasons that follow, we REVERSE their convictions and REMAND for a new trial.

## BACKGROUND

Charlotte Ethridge owned a beauty salon in Macon, Georgia known as Hairistocrat Cutters. The salon was destroyed by fire on February 27, 1987. The cause of the fire was never conclusively determined, although it appeared to be mechanical or electrical in nature. At that time, the business was insured by a policy with the Hanover Insurance Company which provided for $40,000.00 coverage for the contents of the business and loss of income for up to one year.

The day after the fire, Mrs. Ethridge was visited by a claims adjuster for Hanover who instructed her on how to file a claim under the policy. Over the course of the next month, Mrs. Ethridge and her husband, Champ Ethridge, prepared a nine-page inventory of property lost in the fire. Hanover eventually paid Mrs. Ethridge the policy limit of $40,000.00 for property loss and $12,186.24 for loss of earnings for the balance of 1987.

On August 16, 1988, an FBI agent interviewed Mrs. Ethridge concerning the fire. Then on August 24, 1988, the agent executed a search warrant for the Ethridge residence. During that search, the agent found items in the residence that had been listed on the insurance claim inventory.

The Ethridges were indicted by a federal grand jury on September 28, 1989 for one count of conspiracy to commit mail fraud, 18 U.S.C. §§ 371 & 1341 (1988),[1] and two substantive counts of mail fraud, 18 U.S.C. § 1341 (1988). After a jury trial, the Ethridges were convicted of all charges. This appeal followed.

## DISCUSSION

■ Mail fraud under 18 U.S.C. § 1341 (1988) is the intentional participation in a scheme to defraud another of money or property, and use of the mails in furtherance of that scheme. *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); *United States v. Downs,* 870 F.2d 613, 615 (11th Cir.1989).

In this case, the Ethridges were charged with knowingly falsifying insurance claim forms in order to defraud the insurance company of money. While the government introduced evidence that items were listed on the claim inventory that were not destroyed in the fire, the Ethridges attempted, through cross-examination of Hanover's insurance adjuster, to introduce evidence that the value of the valid, uncontested items on the claim inventory exceeded the policy limit. Although the government apparently conceded that the Ethridges' valid loss exceeded the policy limit, *see* (R2:19–20), it successfully argued at trial that this evidence was inadmissible. The trial judge essentially ruled that the evidence was not admissible because the Ethridges had not

---

1. 18 U.S.C. § 317 (1988) provides in pertinent part:

 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

 18 U.S.C. § 1341 (1988) provides:

 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

presented evidence that Mrs. Ethridge had actually totalled up the claim and found that it exceeded the policy limit. (R3:90–91)

■ First, the Ethridges, citing *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), apparently contend that where the value of validly claimed items exceeds the insurance policy limit, the insurance company was merely defrauded of something intangible, rather than of *money or property* as required by the statute. From this premise, the Ethridges argue both that there was insufficient evidence of this element of the offense,[2] and that evidence that the value of the validly claimed items exceeded the policy limit was relevant to this element and therefore improperly excluded.

■ In *McNally,* the United States Supreme Court held that "[t]he mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." *Id.* 483 U.S. at 356, 107 S.Ct. at 2879; *see also Carpenter v. United States,* 484 U.S. 19, 25, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987); *United States v. Goodrich,* 871 F.2d 1011, 1013 (11th Cir.1989). By contrast, the alleged scheme in the case at bar was clearly designed to defraud the insurance company of *money, i.e.,* reimbursement for property not actually destroyed in the fire. The fact that the policy limits prevented recovery does not change the essential character of the scheme. We agree with the government that the Ethridges' argument is simply another way of saying that the Ethridges were not guilty because the scheme was not successful. Success of a scheme to defraud, however, is not a requirement under section 1341. *See, e.g., United States v. Scott,* 701 F.2d 1340, 1347 (11th Cir.), *cert. denied,* 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 158 (1983); *United States v. Foshee,* 569 F.2d 401, 403, *modified and clarified,* 578 F.2d

629 (5th Cir.1978).[3] Moreover, to the extent that the policy limit made the monetary interest in this case intangible, it still comes under the mail fraud statute. Section 1341 "applies to any fraudulent scheme involving a monetary or property interest, *whether that interest is tangible or intangible.*" *United States v. Dynalectric Co.,* 859 F.2d 1559, 1570 (11th Cir.1988) (emphasis added), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989).

■ The Ethridges further argue, however, that evidence that the value of the validly claimed items exceeded the policy limits was also relevant to the essential element of intent to defraud. On this point, we agree. Specific intent to defraud can be difficult to prove. "A defendant can testify on his intent ... but more often circumstantial evidence must be introduced to allow the jury to infer intent." *Foshee,* 578 F.2d at 632. For this reason, this court has traditionally had a liberal policy as to the admission of evidence tending to prove intent in mail fraud cases. *Id.*

The crux of the Ethridges' defense was that the errors on the claims inventory were simple mistakes, not intentional falsehoods. Evidence that the Ethridges did not actually defraud Hanover of any money because the value of the validly claimed items exceeded the policy limit is clearly relevant to whether the Ethridges intentionally falsified the inventory in order to defraud Hanover. *See Foshee,* 569 F.2d at 403 ("In determining intent, it is clear that the jury may consider that the banks were not defrauded since they suffered no financial loss."). Whether Mrs. Ethridge actually totalled up the inventory and determined that the value exceeded the policy limit affects the weight, not the relevancy, of that evidence. If Hanover had lost money, the government would likely have introduced that fact as evidence of intent to defraud. In our opinion, the Ethridges are equally entitled to argue that the fact that Hanover did not suffer a loss related to

2. As the Ethridges failed to renew their motions for judgments of acquittal after presenting evidence on their behalf, we review this claim only for a "manifest miscarriage of justice." *See United States v. Tapia,* 761 F.2d 1488, 1492 (11th Cir.1985).

3. Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

their intent, and present evidence to support that argument. *See Foshee*, 578 F.2d at 633. The jury, armed with all relevant evidence could then ultimately decide this issue.

Although the trial court has discretion to exclude testimony and will not be reversed absent an abuse of discretion, *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir.1989), "[t]he trial court's discretion does not extend to exclusion of crucial relevant evidence." *Id.* at 777. The evidence at issue in this case was crucial to the Ethridges' defense, and its exclusion was error. Because the Ethridges were prevented from presenting an adequate defense, we have no alternative but to require a new trial.[4]

## CONCLUSION

For the reasons set forth above, we REVERSE the convictions of Charlotte Stephens Ethridge and Champ Drew Ethridge, Jr. on all counts, and REMAND to the district court for a new trial.

---

4. The Ethridges also challenge the court's application of the sentencing guidelines on two grounds: (1) the court's finding that the conspiracy involved "more than minimal planning" is clearly erroneous, and (2) the court failed to resolve whether Charlotte Ethridge was an "organizer" of criminal activity. Because we remand for a new trial, we decline to address these claims.