[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 14, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11053
Non-Argument Calendar

_____

D. C. Docket No. 06-20386-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENTRELL J. MILLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 14, 2008)**

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

After a jury trial, defendant Kentrell J. Miller appeals his conviction and

sentence for being a felon in possession of ammunition in and affecting interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). After review, we affirm.

## I. BACKGROUND

### A. Trial

At trial, Officer Alain Cruz, a detective with the Miami Police Department, testified that he went to defendant Miller's address to arrest Miller on an outstanding warrant. When Miller saw Cruz, Miller ran inside a dwelling. Cruz chased Miller, and when Cruz got to the door of the dwelling, Miller closed the door in Cruz's face. Cruz kicked the door to open it, entered the dwelling, took Miller into custody, and then searched Miller's person. Miller was wearing sweatpants, but no shirt. In the front right pocket of Miller's sweatpants, Cruz found a small assault rifle ammunition magazine with four bullets and a bag containing a substance that Cruz thought was cocaine.[1] Cruz visually inspected the area immediately surrounding Miller after he arrested Miller, but did not search the dwelling.

On cross examination, Officer Cruz conceded that he did not remember the color of defendant Miller's sweatpants. Cruz testified that he wrote two reports

---

[1]Laboratory tests revealed that the substance found in Miller's pocket was not cocaine.

detailing Miller's arrest: (1) an arrest form, and (2) an offense incident report. Defense counsel presented the incident report to Cruz on the witness stand. Cruz acknowledged that he completed that incident report on the day of the arrest and that his report stated that Miller was wearing sweatpants.

Cruz initially denied preparing a second version of that incident report. Defense counsel then presented Cruz with a second version of that incident report, which Cruz admitted did not contain a reference to Miller wearing sweatpants. Cruz testified that it was possible that he completed a second report under the mistaken belief that he had not completed the prior report or that he might have added this information if he noticed it was missing from the report, but was not sure if either was the case. Cruz admitted that the two incident reports were identical, except for the reference to Miller wearing sweatpants, and confirmed that it was his handwriting in the report noting that Miller was wearing sweatpants.

Officer Luis Rojas, a detective with the Miami-Dade Police Department, testified that he observed Miller being searched and saw a bag containing suspected cocaine and an ammunition magazine containing four rounds removed from the front right pocket of Miller's sweatpants. Rojas further testified that he did not see any officers enter any rooms of the dwelling other than the living room or search the dwelling.

3

On cross examination, Rojas testified that he did not remember any details about the sweatpants Miller was wearing when he was arrested. Rojas completed the arrest affidavit and did not indicate therein whether Miller was wearing sweatpants when the officers arrested him. However, Rojas stated in the affidavit that the seized items were taken from Miller's front right pocket. After defense counsel showed Rojas the two copies of the incident reports prepared by Cruz, Rojas testified that only the incident report stating that Miller was wearing sweatpants would have been filed in the district office because it had a signature of approval from a reviewing sergeant.

After the government rested its case, defense counsel moved to admit into evidence the two incident reports because they showed that changes had been made to the report. After defense counsel argued that the reports would be used for impeachment purposes and to show that there were changes in the report, defense counsel conceded that these points had already been admitted by the officers. Defense counsel argued, however, that the reports showed that the officers had fabricated "some very important information." The court determined that defense counsel could argue that point, but the reports still were inadmissible hearsay.

When asked which hearsay exception applied to the incident reports, defense counsel responded that they were admissible under Federal Rule of Evidence

4

803(15), a hearsay exception for statements in documents affecting an interest in property. The district court rejected this argument. Defense counsel also argued that the incident reports were being offered to show that one report had been altered, not for their truth, and that the report was hearsay only when used "[f]or the purpose of prosecution." The government objected that the copies were excluded under Federal Rule of Evidence 803(8), which generally excepts public records and reports from the hearsay rule, but explicitly excludes reports of matters observed by law enforcement in criminal cases from the exception. The district court excluded the copies of the incident reports from evidence, but instructed defense counsel that the statements therein could be used for impeachment.

The defense presented testimony from Tanika Pacheco, Miller's girlfriend, that Miller had on shorts when he was arrested. Pacheco further testified that she observed officers looking around a hallway and in a closet and searching Miller's car. Pacheco observed that several items were out of place after the police left, but admitted that she did not know if Miller's mother, who was still inside the house, or the police officers moved these items.

Seleatha Lee, Miller's mother who lived at the dwelling, testified that Miller was wearing shorts on the day of the arrest. Lee also testified that she had found the ammunition magazine and some other items on top of a cabinet when she first

5

moved into the apartment and had placed them in a safe approximately one month before Miller was arrested.

After the defense rested its case, the district court instructed defense counsel to remove the safe from the courtroom because the defense had not introduced it into evidence. Defense counsel then moved to reopen the case in order to introduce the safe into evidence. The district court found that the only dispute was whether the bullets were in the safe and the jury did not need to see the safe in order to decide whether to believe Lee's testimony. Therefore, the district court denied the motion to reopen.

During the jury's deliberations, the jury requested copies of the incident reports. In explaining to the jury that the reports had not been admitted into evidence, the district court stated that "[t]here was testimony about the police reports, but you are not entitled to see the actual reports because they were not introduced, but you can, of course, consider the testimony about the police reports." After further deliberation, the jury found Miller guilty.

## B. Sentencing

The presentence investigation report ("PSI") calculated a base offense level of 24, pursuant to U.S.S.G. § 2K2.1(a)(2). The PSI stated that Miller qualified as an armed career criminal under 18 U.S.C. § 924(e) based on these state

convictions: (1) a 1987 conviction for carrying a concealed firearm based on a nolo contendere plea; (2) a 1988 conviction for two counts of battery of a police officer and two counts of resisting a police officer with violence; (3) a 1990 conviction for battery of a police officer, resisting an officer with violence, and disorderly conduct; (4) a 1990 conviction for two counts of aggravated assault on police with a firearm; and (5) a 1992 conviction for armed trafficking in cocaine, attempted robbery, conspiracy to traffic cocaine, and unlawful possession of a firearm by a convicted felon. Based on an adjusted total offense level of 34 and a criminal history category of VI, Miller's guidelines range was 262 to 327 months. The statutory minimum sentence was 15 years' imprisonment.

Miller moved to continue the sentencing hearing on the grounds that three of his state convictions were obtained in violation of his right to counsel. Miller requested thirty days to allow him to obtain the proper documentation for the court to resolve this objection. Miller indicated that the government did not oppose this motion.

At sentencing, defense counsel explained to the district court that it could examine Miller's prior convictions because "you know how these things work where they bring them over, they offer them, do you want to go home that day, credit time served, they don't have an opportunity to have any effective

representation." When the district court asserted that the state public defenders provided good representation, defense counsel responded, "I'm not complaining about the quality of the representation." But counsel then asserted, "It's not effective representation when three lawyers are, you know, first appearance he gets one lawyer, the second appearance for a plea he gets a second, and the third time he walks into court for a trial date, there's a third lawyer there."

The district court then examined Miller's prior convictions and noted that the record indicated that Miller had been represented by state public defenders, whom the district court presumed had provided effective assistance. The district court noted that it generally could not examine the constitutionality of an earlier state conviction for the first time in calculating a defendant's criminal history. Accordingly, the district court denied Miller's motion to continue the sentencing hearing.

Turning to the guidelines calculations, the parties agreed that Miller's offense level should be reduced by one level because the substance found on his person was not cocaine and that his criminal history score should be IV, not VI. Based on a total offense level of 33 and a criminal history score of IV, the district court calculated a guidelines range of 188 to 235 months. Both the government and defense counsel recommended a sentence at the bottom of the guidelines

8

range.

When allowed to speak before sentencing, Miller only said, "I have nothing to say, Your Honor, besides I'm not guilty for possession of ammunition."

The district court expressed concern about Miller's convictions for batteries on police officers, which it observed were serious offenses. The district court detailed one of the prior offenses where the police tried to pull over a car that Miller was driving and, during the chase, shots were fired from the car at police and Miller tried to ram various police units. The court also reviewed Miller's conviction for conspiracy to traffic narcotics and armed robbery.

The district court stated that it had considered all of the § 3553(a) factors, particularly Miller's history, characteristics, prior criminal record, and Miller's lack of acceptance of responsibility. The district court determined that a sentence at the bottom of the guidelines range was insufficient because Miller had received a 15-year sentence before, had violated parole, and was serving a 6-year sentence at the time of the sentencing hearing. Thus, the district court sentenced Miller to 228 months' imprisonment.

After sentencing, defense counsel objected that Miller's sentence was unreasonable, particularly in light of the government's recommendation that Miller be sentenced at the low end of the guidelines.

## II. DISCUSSION

### A. Cumulative Evidentiary Error

Miller argues that he was denied a fair trial due to the cumulative impact of the district court's errors in (1) not admitting the incident reports, and (2) denying his motion to reopen his case to seek admission of the safe.[2] The cumulative effect of multiple errors may require reversal of an appellant's conviction where, in combination, those errors prejudice a defendant's right to a fair trial. United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005).

We need not consider whether the incident reports were admissible because any alleged error was harmless. During cross-examination, defense counsel showed Cruz the two versions of the incident report and expressly questioned Cruz as to why only one version of the report stated that Miller was wearing sweatpants when he was arrested. Cruz conceded that there was a distinction in the two reports and that the added information about the sweatpants was in his handwriting. Cruz also could not explain why he had made this particular change to the report. Although the district court did not admit the two incident reports,

---

[2]This Court reviews determinations of the admissibility of evidence for an abuse of discretion. United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002). Even if a district court erred in an evidentiary ruling, we will reverse only if the error was not harmless, i.e., if there is a reasonable likelihood that it affected the defendant's substantial rights. United States v. Khanani, 502 F.3d 1281, 1292 (11th Cir. 2007).

Miller was allowed to present the two differing versions of Cruz's incident reports to the jury and to use the reports to challenge Cruz's testimony that Miller was wearing sweatpants at the time of his arrest and that the ammunition clip was found in the pocket of his sweatpants.

The jury was thus aware of the difference about the sweatpants in the two incident reports and had to decide whether it found more credible Cruz's testimony or the defense's theory that Miller was wearing boxer shorts without pockets at the time of the arrest and that the police found the ammunition clip in a safe during a subsequent search of the dwelling.

Further, the district court expressly instructed the jury that it could consider all of the testimony regarding the reports, even though the reports themselves had not been admitted into the record. Because Miller was allowed to use the reports for cross-examination and to discuss them during closing argument, we conclude that there is no reasonable likelihood that exclusion of these reports from the record violated Miller's substantial rights. Thus, any error in the district court's ruling was harmless.

The district court's denial of Miller's motion to reopen to put the physical safe into evidence also presents no basis for reversal of Miller's conviction.[3] We

_____

[3]"The decision to reopen a case to introduce evidence after the parties have rested is committed to the sound discretion of the district court." United States v. Cohen, 888 F.2d 770,

11

recognize that Lee testified that the safe was in the dwelling and that she had stored the ammunition clip in it. Indeed, there was no evidence contradicting Lee's claim that there was a safe in the dwelling. Rather, the conflict in the case was over the location of ammunition. The jury had to determine if it found Lee more credible than the testifying officers as to what Miller was wearing that day and whether the ammunition was on his person. Having the safe itself in the jury room would not have helped the jury's credibility determination. Therefore, we cannot say that the court abused its discretion in denying the motion to reopen in order to introduce the safe itself into evidence.

Thus, to the extent that there was any error by the district court in the two issues discussed above, we conclude that Miller has not carried his burden to show that the cumulative impact of such errors denied him a fair trial.

## B.     Motion to Continue Sentencing

We review a district court's denial of a motion to continue sentencing for abuse of discretion. United States v. Edouard, 485 F.3d 1324, 1350 (11th Cir. 2007). A defendant generally cannot collaterally attack prior convictions used by the district court in federal sentencing proceedings, except where the defendant can

---

775 (11th Cir. 1989). When evaluating the district court's exercise of discretion, we consider (1) the timeliness of the motion to reopen, (2) the character of the testimony to be offered, (3) the effect of granting the motion to reopen, and (4) the reasonableness of the excuse for the request to reopen. See United States v. Byrd, 403 F.3d 1278, 1284 (11th Cir. 2005).

sufficiently demonstrate that an earlier conviction was "presumptively void." United States v. Roman, 989 F.2d 1117, 1120 (11th Cir. 1993) (en banc). "[T]he kinds of cases that can be included in the 'presumptively void' category are small in number and are perhaps limited to uncounseled convictions." Id. The Supreme Court has considered a defendant's argument that his prior convictions were invalid for sentencing purposes on ineffective-assistance-of-counsel grounds and declined to "extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel." Custis v. United States, 511 U.S. 485, 487-88, 496, 114 S. Ct. 1732, 1734-35, 1738 (1994).

Miller sought to continue the sentencing hearing because he believed that three of his prior state convictions were obtained in violation of his right to counsel and sought time to obtain information on them. At sentencing, defense counsel suggested that Miller had not received effective representation because he was persuaded to plead guilty quickly and had a different lawyer at every stage of the criminal proceedings. Despite the contrary assertions on appeal, defense counsel sought to challenge the quality of attorney representation Miller received in these prior convictions, not that Miller did not have any attorney representation. The district court properly denied the motion to continue sentencing on a federal conviction because Miller could not collaterally attack his prior state convictions

13

based on ineffective assistance of counsel in state court.[4] See Roman, 989 F.2d at 1120.

## C. Reasonableness of 228-Month Sentence

We review the reasonableness of a final sentence under an abuse-of-discretion standard. Gall v. United States, ___ U.S. ___, 128 S. Ct. 586, 594 (2007). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in [18 U.S.C.] section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Under § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). The § 3553(a) factors include, inter alia, (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to afford adequate deterrence to criminal conduct, and (3) the Sentencing Guidelines range. See

---

[4]On appeal, Miller relies on information he obtained from a Florida courts' website to argue that the district court sentenced him as an armed career criminal based on incomplete information about his prior state convictions. Specifically, Miller argues that (1) adjudication was withheld on his 1987 conviction and there is no indication online that he was represented by counsel, (2) his 1988 conviction was reduced to a misdemeanor, and (3) the disorderly conduct count in his 1990 conviction was reduced to a misdemeanor and there is no indication online that he was represented by counsel. Miller, however, did not argue to the district court that it should continue sentencing because he suspected that some of the prior convictions were uncounseled or not qualifying felonies. Furthermore, Miller does not offer any explanation as to why he could not have obtained this information from the Florida courts' website earlier and presented these arguments to the district court. Therefore, because Miller did not object on these grounds to the prior convictions listed in the PSI to support the armed career criminal enhancement, he is deemed to have admitted these findings. United States v. Lindsey, 482 F.3d 1285, 1294 n.9 (11th Cir.), cert. denied, ___ U.S. ___, 128 S. Ct. 438 (2007).

id. § 3553(a)(1), (2)(B), (4).

When considering whether a defendant's sentence is reasonable, we have compared the sentence actually imposed to the statutory maximum. See United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005). Also, we have recognized that "there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Talley, 431 F.3d at 788.

At sentencing, the district court stated that it had considered all of the § 3553(a) factors, particularly Miller's personal history and characteristics. Specifically, the district court expressed concern over (1) Miller's 1990 conviction for aggravated assault that involved a vehicle chase with police where shots were fired at police officers and Miller attempted to ram various police units, and (2) his 1992 conviction where Miller fired shots at an undercover police officer participating in an arranged drug transaction. The district court noted that Miller received a fifteen-year sentence for the 1992 conviction. Although the government recommended a sentence at the bottom of the guidelines range (188 months), the district court imposed a 228-month sentence, which was within the guidelines range and below the statutory maximum term of life imprisonment, based on

15

Miller's criminal record, his failure to accept responsibility for his present offense, and the fact that he was presently serving a state court sentence for violating his parole.

The record reveals that the district court considered the arguments at sentencing and the § 3553(a) factors, and imposed a reasonable sentence within the guidelines range that was "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Thus, we conclude that the district court did not abuse its discretion in sentencing Miller to 228 months' imprisonment.

**AFFIRMED.**