[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12324
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00159-CAP-GGB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDIKAS STRUBELIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 4, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

After a jury trial, Defendant Edikas Strubelis appeals his convictions and 51-

month total sentence on three counts of transportation of stolen motor vehicles, in violation of 18 U.S.C. §§ 2312 and 2, three counts of possession and concealment of stolen motor vehicles, in violation of 18 U.S.C. § 2313, and three counts of attempted exportation of stolen motor vehicles, in violation of 18 U.S.C. § 553(a)(1). Strubelis argues that at trial the district court erred by: (1) excluding his evidence of prior bad acts of the government's witness; and (2) denying Strubelis's motion for a judgment of acquittal on the three transportation counts because the government failed to prove that Strubelis took part in transporting the stolen vehicles. Strubelis also argues that at sentencing the district court misapplied a two-level sophisticated means increase, pursuant to U.S.S.G. § 2B1.1(B)(10)(c), in calculating Strubelis's advisory guidelines range. After review, we affirm Ervin's convictions and total sentence.

## I. BACKGROUND FACTS

### A.    Trial Evidence

Defendant Strubelis was charged with transporting, possessing, and attempting to export three stolen vehicles: (1) a 2011 Mercedes ML350 sedan (Counts 1-3); (2) a 2011 Infiniti QX56 sedan (Counts 4-6); and (3) a 2010 Jaguar XJL sedan (Counts 7-9). Because Defendant Strubelis challenges the sufficiency of the evidence supporting his transportation convictions (Counts, 1, 4, and 7), we review the trial evidence.

2

According to the government's evidence, all three cars were stolen from car dealerships in the same way. Each time, a website called Central Dispatch was used to arrange for a transport company to pick up the car from the dealership and deliver it to the new owner. A few days later, a person from Omega Transport Company ("Omega"), purportedly the transport company that had secured the contract, appeared at the dealership. The person from Omega presented the dealership with the proper paperwork from Central Dispatch, including a bill of lading. The dealership gave the person from Omega the car keys, but sent the title and bill of sale to the new owner separately via Federal Express. The person from Omega then loaded the car on a truck and drove away, ostensibly to deliver the car to its new owner. In each instance, however, the person who took the car was not from the actual transport company hired through Central Dispatch, and in fact the car was stolen.

In this way, the first car, the Infiniti, was stolen on August 26, 2010 from a dealership in Charlotte, North Carolina. Three days later, on August 29, 2010, the second car, the Mercedes, was stolen from a dealership in Huntsville, Alabama. One day after that, on August 30, 2010, the third car, the Jaguar, was stolen from a dealership in Chattanooga, Tennessee.

Although there was no evidence of Defendant Strubelis's direct participation in the three car thefts, within a few days of each, Strubelis had possession of the

3

stolen cars and had arranged to ship them overseas to Lithuania.  Specifically, Defendant Strubelis had the three stolen cars delivered to a company in Alpharetta, Georgia, called LT United Towing & Transport ("LT United").  LT United loads vehicles into shipping containers for international transport.

LT United's manager was Darius Varzinkas, who, like Defendant Strubelis, is a native Lithuanian.  According to Varzinkas, Defendant Strubelis, through a company called Hotlanta Luxury Car Sales ("Hotlanta"),[1] was one of LT United's customers.  Strubelis stored vehicles at LT United's warehouse until a shipping container could be delivered for loading.  Defendant Strubelis always supervised the loading process.

The government's documentary evidence established that LT United, for the shipper Hotlanta, loaded: (1) the container holding the stolen Infiniti on August 26, 2010; (2) the container holding the stolen Mercedes on August 30, 2010; and (3) the container holding the stolen Jaguar on September 7, 2010.  The containers with the Infiniti and the Mercedes were sent to the Port of Charleston, South Carolina.  The container with the Jaguar was sent to the Port of Savannah, Georgia.  The ultimate destination for all three containers was Lithuania.  Varzinkas remembered loading the Mercedes and the Jaguar into shipping containers and that Defendant

---

[1]At various points in the record, this company is referred to as Hotlanta Luxury Car Sales and Hotlanta Luxury Auto Rentals.

Strubelis was present during loading. [2]  Strubelis kept the keys to the cars and gave the titles and other paperwork to the freight forwarding company.

Defendant Strubelis's freight forwarding company was Anchor Freight Services, Inc. ("Anchor Freight"), in Roswell, Georgia.  Anchor Freight booked space on a steamship line, and provided documentation for the vehicles to U.S. Customs, such as titles, a letter of intent, and a dock receipt.  Anchor Freight then sent the clearance papers from Customs to the steamship line so the shipping container could be loaded onto the vessel.  Anchor Freight also arranged for a trucking company to bring an empty shipping container to the place of loading.

According to Daniil Ruvinskiy, the owner of Anchor Freight, Defendant Strubelis was a long-time customer who used at least three different warehouses to load his shipments, one of which was LT United's warehouse.  Ruvinskiy was not present when Defendant Strubelis's vehicles were loaded into the containers.  Instead, Ruvinskiy relied upon Defendant Strubelis to tell him which vehicles were in each container.

After the container was loaded, Defendant Strubelis provided Ruvinskiy with a list of its contents, the original titles to any vehicles, and other information.  Ruvinskiy used Defendant Strubelis's information to prepare the paperwork necessary for Customs to release the container for shipping.  Once the paperwork

---

[2]Although Varzinkas could not remember loading the Infiniti, the documentary evidence indicated that LT United loaded the container holding the stolen Infiniti for Hotlanta.

was stamped and returned from Customs, Defendant Strubelis picked up the paperwork at Ruvinskiy's office.

Defendant Strubelis did not give Anchor Freight the original titles to the three stolen cars loaded into the shipping containers. Instead, for the stolen Mercedes, Strubelis provided Anchor Freight with a title to a 2006 Ford Focus. For the stolen Infiniti, Strubelis provided a title to a 2008 GMC Yukon. For the stolen Jaguar, Strubelis provided a title to a 2000 Toyota Corolla. Relying upon Strubelis's information, Anchor Freight listed the Ford Focus, GMC Yukon, and Toyota Corolla on the paperwork and sent the paperwork and the titles to Customs.

On September 23, 2010, U.S. Customs Officer William Raymond at the Port of Charleston randomly inspected one of Anchor Freight's containers that listed Hotlanta as the shipper. Although the paperwork from Anchor Freight listed a 2006 Ford Focus, inside the container Officer Raymond found the stolen Mercedes. Officer Raymond contacted Customs Officer James Long at the Port of Savannah to request an inspection of another Anchor Freight container for possible stolen vehicles. The container had already been exported, but Customs was able to locate and retrieve it. When the container arrived back in Savannah, Officer Long found the stolen Jaguar in place of a Toyota Corolla listed on the paperwork.

U.S. Customs Officer George Fiad inspected a third Anchor Freight container when in arrived in Germany and found the stolen Infiniti in place of a

6

GMC Yukon listed on the paperwork.  Once the Infiniti was returned to Charleston, investigators searched inside and found receipts with Strubelis's name on them for purchases made between August 24 and August 28, 2010. Investigators also found a latent fingerprint on one receipt matching Strubelis's fingerprint.

## II.  DISCUSSION

### A.    Exclusion of Government Witness's Similar Acts

At trial, the government's witness Varzinkas admitted on cross examination that within the last three years LT United had been investigated for loading stolen heavy equipment into shipping containers and that Varzinkas recently was questioned about a stolen tractor found in one of LT United's shipping containers. On redirect, Varzinkas explained that the tractor was delivered to LT United's warehouse by a Russian from Miami who also provided Varzinkas with a bill of sale.  Varzinkas gave the documentation to U.S. Customs when he was interviewed in Savannah about the tractor, and he was not charged in connection with that investigation.

After the government rested, Defendant Strubelis sought to introduce testimony from Officer Vincent Johnson of the Alpharetta Police Department about an investigation into another stolen tractor—a wheel loader worth $300,000—found at LT United's Alpharetta warehouse on September 1, 2011.

According to Strubelis's proffer, Officer Johnson would have testified that Varzinkas told Officer Johnson in an interview that he was surprised when he found the equipment in the yard, and that he did not call the police, but instead took the key to the machinery and put it in his office. The district court sustained the government's objection based on Federal Rules of Evidence 404(b) and 608.

On appeal, Defendant Strubelis argues that the district court abused its discretion by excluding Officer Johnson's testimony because it was crucial to the defense theory that Defendant Strubelis was a "patsy" for Varzinkas and Ruvinskiy, who were the ones actually shipping the stolen cars.[3]

Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b)(1). Such evidence is admissible, however, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Fed. R. Evid. 404(b)(2).

"[T]he standard for admission is relaxed when the evidence is offered by a defendant" rather than by the prosecution because there is less risk of prejudicial effect on the jury. United States v. Cohen, 888 F.2d 770, 776-77 (11th Cir. 1989) Nonetheless, "the party advancing the evidence [still] must demonstrate that it is not offered" as impermissible propensity evidence. Id. at 776. Then, if the

---

[3]We review a district court's evidentiary rulings under Rule 404(b) for a clear abuse of discretion. United States v. Sterling, 738 F.3d 228, 234 (11th Cir. 2013).

8

evidence "is shown to have a special relevance to a disputed issue, the court must balance the probative value against the possibility of unfair prejudice." Id. Further, "if there is simply no other practical means to prove the point, the need factor points strongly toward receipt of such evidence." Id. (quotation marks omitted). In United States v. Cohen, this Court concluded that the district court abused its discretion by excluding "crucial relevant evidence" that the government's witness was capable of concocting and executed the fraud scheme without the defendant's help where "[n]o other practical means of demonstrating this point appears to have been available to the defense." Id. at 776-77.

Here, the district court did not abuse its discretion in excluding Officer Johnson's testimony because it was not "crucial" evidence. Unlike the defendant in Cohen, Defendant Strubelis had ample opportunity to present other evidence of his defense theory to the jury. For example, the jury heard that: (1) Varzinkas and LT United had been investigated for shipping stolen heavy equipment after a stolen tractor was found in one of LT United's shipping containers; (2) LT United bought at least two of the salvage vehicles (the GMC Yukon and the Ford Focus) that ultimately had their titles submitted to Customs in lieu of the stolen vehicles' titles; (3) after LT United cut the GMC Yukon and the Ford Focus into parts, it sent them to Saudi Arabia using Anchor Freight's freight forwarding services; (4) LT United used the Central Dispatch website and had towing vehicles that could pick up cars

from dealerships; (5) LT United, not Defendant Strubelis, determined the order in which the vehicles were loaded into shipping containers, and the three stolen vehicles were found placed in the nose of the shipping containers, where they could not be easily detected during a cursory inspection from the rear doors; and (6) Anchor Freight's Ruvinskiy was under investigation for falsifying title documents submitted to Customs.  In light of the forgoing, it cannot be said that Officer Johnson's testimony was the only practical means to prove to the jury that Varzinkas and Ruvinskiy had the ability and the opportunity to orchestrate the criminal scheme without Defendant Strubelis's involvement.  Accordingly, the exclusion of this additional testimony about another stolen tractor found in LT United's yard was not an abuse of discretion.[4]

## B.    Motion for a Judgment of Acquittal

The district court did not err in denying Defendant Strubelis's motion for a judgment of acquittal on Counts 1, 4 and 7.[5]  The government presented sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that

---

[4]We note that, despite all the evidence Defendant Strubelis was able to present to the jury that Varzinkas and Ruvinskiy could have been the real perpetrators of the scheme, the jury still rejected the defense's theory.  Thus, even assuming arguendo that the district court abused its discretion by excluding Office Johnson's testimony, the error was harmless because it would not have had a substantial influence on the outcome of the trial.  See United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) (explaining that an evidentiary error is harmless if it "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict").

[5]We review de novo both a challenge to the sufficiency of the evidence and the district court's denial of a Rule 29 motion for a judgment of acquittal.  United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011).

10

Strubelis was involved in the interstate transportation of the three stolen vehicles. See 18 U.S.C. § 2312; Fitzpatrick v. United States, 410 F.2d 513, 514-15 (5th Cir. 1969) (stating that the government must prove "(1) that the car was stolen, (2) that defendant transported it in interstate commerce and (3) that defendant had the requisite guilty knowledge concerning the theft of the car").

It is well settled that "unexplained possession of a recently stolen vehicle in another state may give rise to an inference that the party in possession transported the vehicle and knew that it was stolen." Fitzpatrick, 410 F.2d at 515; see also United States v. Casey, 540 F.2d 811, 816 (5th Cir. 1976); Beufve v. United States, 374 F.2d 123, 125-26 (5th Cir. 1967); Broom v. United States, 342 F.2d 419, 419-20 (5th Cir. 1965). "The possession of a stolen vehicle which if unexplained gives rise to the important inferences of transportation and guilty knowledge, means to have management, care, dominion, authority and control, singly or jointly over the vehicle." Fitzpatrick, 410 F.2d at 516 (internal quotation marks omitted).[6]

Here, according to the government's evidence, Defendant Strubelis had all three stolen vehicles delivered to LT United in Alpharetta, Georgia, for loading; Strubelis was present during the loading and supervised the process; and, after the

---

[6]Strubelis argues that the cases applying the inference of transportation in § 2312 offenses were decided by the former Fifth Circuit and have not been cited by the Eleventh Circuit in a published decision. However, this Court adopted as binding precedent all decisions of the Fifth Circuit prior to October 1, 1981, which includes these cases. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). As such, we are bound by these cases until they are overruled by this Court sitting en banc or the U.S. Supreme Court. United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008).

11

loading, Strubelis kept the keys and titles to the vehicles.  Further, the government showed that the Infiniti was loaded at LT United on August 26, 2010, the very same day that it was stolen in South Carolina.  The Mercedes was loaded at LT United on August 30, 2010, just one day after it was stolen in Huntsville, Alabama.  The Jaguar was loaded at LT United on September 7, 2010, one week after it was stolen in Chattanooga, Tennessee.

From these facts, a jury could reasonably find that Defendant Strubelis possessed the stolen vehicles in Georgia within days, if not hours, of their thefts in other states and could infer from Strubelis's unexplained possession that he knew they were stolen and was involved in their transportation into Georgia.  Although none of the car dealers identified Defendant Strubelis as the person who picked up the stolen vehicles, he did not have to personally transport the cars to be liable as a principal for their interstate transportation.  See 18 U.S.C. § 2 (providing that whoever "aids, abets, counsels, commands, induces, or procures" the commission of the offense may be punished as a principal).

We note that the government also presented evidence that, once the stolen vehicles were loaded into the containers, Defendant Strubelis arranged for the containers to be moved (via Anchor Freight) from Alpharetta to ports in Charleston

12

and Savannah so they could be loaded onto ships.[7]  Arguably, these facts showed that Strubelis himself caused the stolen vehicles to continue to be transported in interstate commerce.  See McElroy v. U.S., 455 U.S. 642, 653-54, 102 S. Ct. 1332, 1338-39 (stating that the phrase "interstate commerce" in a similar statute, 18 U.S.C. § 2314, means transportation "at any and all times during the course of its movement in interstate commerce, and that the stream of interstate commerce may continue after a state border has been crossed); Barfield v. United States, 229 F.2d 936, 939 (5th Cir. 1956) (stating that 18 U.S.C. § 2312 does not require the defendant to drive the vehicle across the state line and that "any driving, whether wholly within the state of origin, state of destination, or from and to, if done as a substantial step in the furtherance of the intended interstate journey, is, we think, within the act").

Viewed in the light most favorable to the government, the trial evidence was more than sufficient to support the jury's finding beyond a reasonable doubt that Strubelis was guilty of transporting the stolen vehicles in interstate commerce.

---

[7]Section 2312 forbids transporting stolen vehicles in interstate or foreign commerce, and the government presented evidence that the stolen vehicles' ultimate destination was Lithuania, and that two of stolen vehicles made it as far as Germany.  Strubelis's indictment, however, did not charge him with transporting stolen vehicles in foreign commerce, and the government does not argue this basis for affirming the convictions on appeal.

## C.    Sophisticated Means Enhancement

Under U.S.S.G. § 2B1.1, a defendant's offense level is increased by two levels if the offense "involved sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). "Sophisticated means," refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Id. § 2B1.1, cmt. n.9(B). "There is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated." United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010).[8]

The overall scheme here—to steal vehicles by posing as the authorized transport company and then to ship those stolen vehicles overseas—was especially complex. The vehicle thefts involved hacking into computer systems and fooling car dealers with false documentation. Defendant Strubelis points out that he was not charged with the thefts, and the government did not present evidence directly connecting him to the thefts. While this is true, Strubelis's own conduct in the export scheme was also sophisticated. Strubelis relied upon his knowledge of and experience in international shipping of automobiles to coordinate transportation across jurisdictions and then overseas. Strubelis used titles of salvage vehicles

---

[8]"We review the district court's findings of fact related to the imposition of sentencing enhancements, including a finding that the defendant used sophisticated means, for clear error." Ghertler, 605 F.3d at 1267.

obtained from insurance auctions to provide fraudulent documentation to U.S. Customs and supervised the loading of the stolen vehicles inside shipping containers to avoid detection in case of inspection.  The district court properly applied the two-level sophisticated means enhancement based on Strubelis's own conduct.

**AFFIRMED.**